**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00355-CR**
**NO. 09-13-00356-CR**

_____

**DANNY RAY RANCHER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-01-00820 CR (Counts 1 and 2)**

**MEMORANDUM OPINION**

Appellant Danny Ray Rancher appeals his conviction for aggravated sexual assault of a child and for sexual assault of a child. The jury found Rancher guilty of aggravated sexual assault and sentenced him to life imprisonment and a fine of $10,000. The jury also found Rancher guilty of sexual assault and sentenced him to twenty years imprisonment. The two sentences are to run concurrently. In two

1

issues, Rancher complains about the admission of outcry witnesses' testimony. We affirm the trial court's judgments.

## I. Background

The record reflects that the complainant is appellant's daughter.[1] In November 2011, Daughter, at around age twenty-eight, reported acts of sexual abuse she endured as a child to Officer Adam Culak of the Willis Police Department. The State indicted Rancher on one count of aggravated sexual assault and one count of sexual assault. The State alleged these acts occurred "on or about November 08, 1996," when Daughter was "a child younger than 14 years of age and not the spouse of the Defendant[.]" Rancher pleaded "not guilty" to the charged offenses. The jury found Rancher guilty of the charged offenses. This timely appeal followed.

## II. Standard of Review

We review a trial court's decision to admit an outcry statement for abuse of discretion. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990) (en banc); *see also Robinett v. State*, 383 S.W.3d 758, 761 (Tex. App.—Amarillo 2012, no pet.). We will reverse the trial court's decision only when the court's decision falls

---

[1] To protect the privacy of the parties involved in this appeal, we identify them by their familial titles or initials.

outside the zone of reasonable disagreement. *Shaw v. State*, 329 S.W.3d 645, 652 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

### III. Outcry Testimony

In Rancher's first and second issues, he argues the trial court erred in admitting the outcry testimony from both Daughter's mother and Officer Culak. In his first issue, Rancher argues the trial court erred in admitting the outcry testimony of Daughter's mother because article 38.072 of the Texas Code of Criminal Procedure was inapplicable as Daughter was thirteen years old when she made the statement to her mother.[2] In his second issue, Rancher argues the trial court erred in admitting the outcry testimony of Officer Culak because Daughter was twenty-eight years old at the time she made the statement to Culak and therefore article 38.072 does not apply to her statements. The State responds that Rancher failed to preserve either issue for review. The State argues in the alternative that even if the trial court erred in admitting Mother and Culak's testimony, any error was harmless.

---

[2] The parties disagree over the version of article 38.072 that applies to the facts of this case. Because of our resolution of this appeal, we cite to the current version of the statute.

## A. Preservation of Error

We first address whether Rancher properly preserved his issues for appellate review. Rule 33.1(a) of the Texas Rules of Appellate Procedure requires that a party make a "timely request, objection, or motion" to the trial court that "state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" Tex. R. App. P. 33.1(a)(1)(A); *see Resendez v. State*, 306 S.W.3d 308, 312 (Tex. Crim. App. 2009). "The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." *Id.*

Rancher complains that the trial court erred in admitting the outcry testimony from both Daughter's mother and Officer Culak. Article 38.072, entitled "Hearsay Statement of Certain Abuse Victims," provides that some hearsay statements are admissible in prosecuting certain offenses, including the offense of aggravated sexual assault of a child and sexual assault of a child. *See* Tex. Code Crim. Proc. Ann. art. 38.072, §§ 1, 2 (West Supp. 2014); *see also* Tex. Penal Code Ann. § 22.011(a)(2) (West 2011), § 22.021(a)(1)(B) (West Supp. 2014). Article 38.072 applies to statements that describe the alleged offense and that (1) were

4

made by the child against whom the offense allegedly was committed and (2) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. Tex. Code Crim. Proc. Ann. art. 38.072, § 2(a). The hearsay rule will not bar these statements as inadmissible if, among other things, the trial court finds, in a hearing outside the presence of the jury, the statement is reliable based on the time, content, and circumstances of the statement. *Id.* § 2(b)(2). Once a defendant raises a hearsay objection to testimony regarding a child victim's statement, the State, as the proponent of the evidence, has the burden to establish compliance with the provisions of article 38.072. *See Long v. State*, 800 S.W.2d 545, 547-48 (Tex. Crim. App. 1990); *Cordero v. State*, 444 S.W.3d 812, 816 (Tex. App.—Beaumont 2014, pet. filed).

Regarding Rancher's first issue concerning the admission of outcry testimony from Daughter's mother, the State argues that Rancher bases his appellate issue on an alleged technical disqualification under an earlier version of article 38.072 requiring the child to be younger than thirteen years of age at the time of the outcry, but he did not present this argument to the trial court. The trial court conducted a hearing outside the presence of the jury to determine the admissibility of Mother's outcry testimony. At trial, Rancher objected to Mother's testimony, stating only that his objection was "under 38.072." The trial court

5

overruled Rancher's objection. We conclude Rancher's objection based on article 38.072 was sufficient to preserve error for any failure to comply with article 38.072, including an argument that State failed to comply with the statute because Daughter was allegedly older than the age established by statute. *See Long*, 800 S.W.2d at 547-48.

Regarding Rancher's second issue concerning the admission of outcry testimony from Officer Culak, the State argues that Rancher did not specifically raise his appellate issue in his trial objection. At trial, Rancher objected to Culak's testimony as hearsay. In a hearing outside the presence of the jury to determine the admissibility of Culak's testimony regarding Daughter's outcry statement, Rancher explained his objection as follows:

> We would object, Judge. It is hearsay and, in addition, under Article 38.072, the Texas Code of Criminal Procedure, I would point the Court specifically to Section 2, Parenthetical 1 -- I'm sorry -- Parenthetical 3, made to the first person the person made the outcry to.
>
> . . . .
>
> He was not the first person. Unfortunately, for the State, the mother could not give any details as far as the letter, but she was used as an outcry witness about sexual abuse.
>
> To use a second outcry witness is -- first of all, it is hearsay and, secondly, it violates the statute or the article in the Code of Criminal Procedure. Therefore, we would object.

6

The trial court overruled Rancher's objections. Rancher presented additional points to the trial court, but the trial court once again noted that Rancher's objection to the testimony was overruled. At Rancher's request, the trial court granted him a running objection to Culak's testimony. On appeal, Rancher specifically argues that article 38.072 does not apply because Daughter was no longer a child at the time she made her statement to Culak. The State contends that because Rancher did not include this specific argument to the trial court he has not preserved error. We conclude Rancher's objection to Culak's testimony based on hearsay and article 38.072 was sufficient to preserve error for any failure by the State to comply with the provisions of article 38.072, including that Daughter's statements were not the type the statute was designed to address. *See Long*, 800 S.W.2d at 547-48; *see also Cordero*, 444 S.W.3d at 816-19.

## B. Harmless Error

Rancher argues that the trial court erred in admitting the testimony of Daughter's mother when the trial court applied the wrong version of article 38.072 and application of the correct statute would have rendered the testimony inadmissible because Daughter did not meet the age qualification in the correct statute. Rancher argues that the trial court erred in admitting the testimony of

7

Officer Culak because article 38.072 only applies to statements made by a child younger than fourteen years of age.

Without concluding that the trial court erred in overruling Rancher's hearsay and article 38.072 objections to the testimony of Mother and Officer Culak, we will review whether error, if any, necessitates a reversal in this case. Under the facts of this case, we review an erroneous admission of hearsay as non-constitutional error, subject to a harm analysis under rule 44.2(b) of the Texas Rules of Appellate Procedure. *See* Tex. R. App. P. 44.2(b). We disregard non-constitutional error unless it affects the substantial rights of the defendant. *Id.* "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A conviction should not be overturned for such error if, after examining the entire record, we have fair assurance that "the error did not have a substantial *and* injurious effect or influence in determining the jury's verdict." *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). Improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (en banc); *see Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding improper admission

8

of outcry testimony was harmless error because similar testimony was admitted through complainant, pediatrician, and medical records). Neither the State nor the appellant has the burden to show harm when an error has occurred; rather, after reviewing the record, it is the appellate court's duty to assess harm. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). We must reverse a conviction for nonconstitutional error if we have "grave doubt" about whether the result of the trial was free from substantial influence of the error. *Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011). "'Grave doubt' means that 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'" *Id.* (quoting *Burnett v. State*, 88 S.W.3d 633, 637-38 (Tex. Crim. App. 2002)).

Rancher complains about Mother's testimony that Daughter had written her a letter detailing Daughter's allegations of sexual abuse by Rancher. Mother testified that she did not recall what the letter stated, but that it was about Rancher molesting Daughter. Mother testified that after she read the letter she confronted Rancher and he denied all allegations of abuse.

Rancher also complains about Officer Culak's testimony that Daughter told him that Rancher had sexually abused her from the age of thirteen until she was almost eighteen years old. At trial, the defense called Officer Culak to testify.

9

Officer Culak testified that he met with Daughter on November 2, 2011 at the Willis Police Department. Culak testified that when Daughter first came to the station she initially only complained that Rancher was harassing her and her husband, but then also told him that Rancher had molested her as a child. Culak testified that he took a written statement from Daughter.

Culak testified that Daughter told him that when she was eight years old Rancher had given her "sexual toys[,]" "sexual pornographic movies[,] and had touched her sexually." Daughter told Culak that by the time she was thirteen years old she had lost her virginity to Rancher. Daughter told Culak that Rancher taught her how to pleasure herself.

Culak testified that Daughter told him that she had written a letter to Mother about what had happened, that Mother believed Daughter made the allegations up for attention, and that Mother had burned the letter after she read it. Culak testified that Daughter told him that when she was fifteen years old one of her friends walked into Rancher's bedroom while Rancher was engaged in sexual acts with Daughter. Culak recalled that Daughter told him that Rancher's sexual abuse continued until she left home at age eighteen.

At trial, Daughter, then twenty-nine years old, testified at length regarding the abuse she endured from Rancher. Daughter explained that Mother became ill

around 1992 or 1993 and required frequent stays in the hospital. Mother ultimately was diagnosed with multiple sclerosis. Approximately a year or two after being diagnosed, Mother became confined to a wheelchair, which required Mother, Daughter, Sister, and Brother to move into a different trailer house that included handicap accommodations. Rancher maintained a separate trailer on the property where he conducted his business and also resided. Because Rancher's trailer was not handicap accessible, Mother could not access it without help and in fact never went to Rancher's trailer.

Daughter testified that Rancher's sexual abuse and grooming of her began when Mother first became ill in the early nineties. Daughter explained in detail how Rancher's abuse began with inappropriate touching and inappropriate conversations. Daughter testified that after the first incident of inappropriate touching, Rancher touched her sexually two to four times a week. Daughter described in detail a time when Rancher digitally penetrated her vagina when she was about eight or nine years old.

Daughter testified that after Rancher moved into his own trailer the inappropriate touching progressed. Daughter explained that she had oral sex with Rancher, that he touched her vagina, and that he would have her watch

11

pornographic movies. She testified Rancher sexually abused her in his trailer three to five times a week.

Daughter testified that when she was thirteen years old she lost her virginity to Rancher and described in graphic detail the abuse she endured during this incident. Daughter testified that after this incident she started having sexual intercourse with Rancher regularly—she estimated it would occur between three to five times a week. She estimated that she has had sexual intercourse with Rancher more than a hundred times.

Daughter testified that Rancher told her not to tell anyone about the abuse and warned her that if she did he would hurt her. Daughter testified that once the sexual abuse started, Rancher sheltered her and would not let her go places that the other children were allowed to go. She testified that sometimes if she would do sexual things, Rancher would later take her to meet up with her siblings.

Daughter recalled that she was thirteen years old when she first told someone about Rancher's abuse; she told her thirteen-year-old cousin. Daughter explained that Cousin had disclosed to Daughter that Cousin had lost her virginity, and in response to Cousin's confession, Daughter told Cousin that she too had lost her virginity and revealed to Cousin that she had had sex with Rancher. Daughter testified that when she made this confession to Cousin, Daughter believed it was

12

normal behavior to have sex with her father because it had been the norm for her. According to Daughter, Cousin did not believe this behavior was normal. Daughter testified that she then wrote Mother a detailed letter explaining what Rancher had been doing to her. Daughter testified that Mother did not believe the accusations, and either Mother or Rancher ultimately burned the letter.

Daughter testified that after she told Mother about Rancher's abuse and Mother did not believe her, Rancher continued to have sexual intercourse with Daughter. Daughter testified that when she was fifteen years old, Sister and a friend of theirs from school walked in on Daughter and Rancher having sexual intercourse.

Cousin corroborated Daughter's testimony. Cousin testified that Rancher would put the television on pornography with five or six children in the room. Cousin testified that after Daughter had confided in her, Cousin convinced Daughter to write Mother a letter. Cousin testified that she was present when Mother confronted Daughter about the letter. Cousin testified she and Daughter were both thirteen years old when this happened. Cousin recalled that Rancher denied the accusations and that his demeanor during the confrontation was unemotional and nonchalant.

13

M.K., a friend of Daughter, also corroborated Daughter's testimony. According to M.K., when she was "still 15, maybe turning 16[,]" she walked into Rancher's bedroom and witnessed Rancher having sex with Daughter. M.K. testified that the expression on Daughter's face suggested she was horrified, embarrassed, and in shock.

Sister also testified. She testified that it was very scary growing up with Rancher because he had a very bad temper. She testified that Rancher is a "very mean and aggressive" person and that she tries not to associate with him. Sister recalled that while they were growing up, Rancher often singled Daughter out and asked Daughter to massage his back. Sister testified that Rancher would keep Daughter from going out and doing things with the other children by saying that he needed her to stay and massage his back or clean his house. Sister recalled an occasion where she and M.K. had gone to Rancher's trailer to ask him for money and to see if Daughter could go with them to a club. Sister testified that she walked into Rancher's bedroom and observed Rancher sexually abusing Daughter.

After examining the entire record, and after considering the nature of the evidence supporting the verdict, we cannot conclude that Rancher's substantial rights were affected by the admission of the complained-of testimony. The Mother's testimony and Officer Culak's testimony were merely cumulative of

14

other evidence admitted without objection. *See Duncan*, 95 S.W.3d at 672. Daughter herself gave detailed testimony concerning Rancher's abuse and the letter she had written to Mother detailing the abuse and Daughter's testimony was substantially corroborated by Cousin, Sister, and M.K. We conclude that the admission of the complained-of testimony did not have a substantial or injurious effect on Rancher's substantial rights. *See id.*; *see also Cordero*, 444 S.W.3d at 823; *Chapman v. State*, 150 S.W.3d 809, 814-15 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Therefore, we disregard any error in the admission of the complained of testimony and overrule Rancher's first and second issues. *See* Tex. R. App. P. 44.2(b).

Having overruled Rancher's issues on appeal, we affirm the judgments of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on September 10, 2014
Opinion Delivered January 28, 2015
Do not publish

Before Kreger, Horton and Johnson, JJ.

15