**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00179-CR**
_____

**ELGIA JERODE GRIFFIN**

**V.**

**THE STATE OF TEXAS**

**On Appeal from the 128th District Court**
**Orange County, Texas**
**Trial Cause No. A-090746-R**

**MEMORANDUM OPINION**

A jury convicted Elgia Jerode Griffin of indecency with a child and assessed a sentence of ten years in prison. In eight appellate issues, Griffin challenges the legal sufficiency of the evidence, several of the trial court's evidentiary rulings, and the denial of his motion to suppress. We affirm the trial court's judgment.

1

## Factual Background

"Ashley Smith"[1] testified that she was fifteen years old when the offense occurred. According to Ashley, Griffin knocked on the door to tell her that some of her dogs had escaped the yard. Griffin followed Ashley and her step-aunt, D.A., to secure the dogs. After D.A. returned to the house, Griffin told Ashley that she would be in trouble if her mother saw her outside in her shirt and shorts. Ashley testified that Griffin grabbed her, kissed her neck, felt her breast, placed his hand inside her pants, and tried to penetrate her with his finger. When Ashley broke away, Griffin asked for her telephone number, told her he would be parked down the street, and asked if she would be back.

D.A. testified that Ashley was upset and crying when she returned to the house. D.R.J., Ashley's mother, testified that Ashley called her on the telephone. Ashley was crying and told D.R.J. that Griffin had touched her, kissed her, stated that he wanted to lick her, and asked for her telephone number. When D.R.J. arrived home and confronted Griffin, he denied touching Ashley. D.R.J. attempted to speak with Griffin and Ashley together, but Ashley became hysterical and ran from Griffin. D.K.J., Ashley's stepfather, testified that Griffin also told him that he did not touch Ashley. He described Ashley as trembling, crying, and hysterical.

---

[1]"Ashley Smith" is a pseudonym used to refer to the complainant.

Detective Robert Estrello testified that he met with Griffin, who appeared nervous and worried. Griffin told Estrello that nothing happened with Ashley and that Ashley was lying. D.K.J. testified that Ashley had lied to him in the past and that Griffin once told D.K.J. that Ashley had misbehaved. Ashley admitted being upset with Griffin for telling her parents that she had misbehaved, but she testified that he was not the only person who disclosed that information to her parents. She denied fabricating her allegations. Estrello testified that he felt Griffin was not being truthful. He explained that Griffin kept mentioning Ashley's clothing, which suggested to Estrello that "there was some kind of attraction there."

Detective Sergeant Sarah Ann Jefferson-Simon testified that, after Estrello's interview with Griffin, she contacted Griffin because she knew him and thought he might be more truthful with her than with Estrello. Initially, Griffin denied touching Ashley. When Jefferson-Simon told Griffin that the DNA evidence would show what happened, Griffin claimed that Ashley used his hand to touch her breast and that she had backed up against him, after which Griffin breathed on her neck.

Legal Sufficiency

In issue one, Griffin contends that the evidence is legally insufficient to support his conviction for indecency with a child. Under a legal sufficiency standard, we assess all the evidence in the light most favorable to the prosecution

3

to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13.

A person commits indecency with a child when he (1) engages in sexual contact with a child under age seventeen or causes the child to engage in sexual contact; or (2) with intent to arouse or gratify the sexual desire of any person, the person exposes his anus or any part of his genitals, knowing the child is present, or causes the child to expose the child's anus or any part of the child's genitals. Tex. Penal Code Ann. § 21.11(a) (West 2011). "Sexual contact" means, if committed with the intent to arouse or gratify sexual desire, (1) any touching, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *Id.* § 21.11(c). Intent to arouse or gratify the sexual desire of any person can be inferred from the accused's conduct, his remarks, and all the surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981).

4

On appeal, Griffin contends the record fails to establish that he touched Ashley with the intent to arouse or gratify his sexual desire. However, Ashley's testimony alone supports a conviction for indecency with a child. *See* Tex. Code Crim. Proc. Ann. art. 38.07 (West Supp. 2014). The jury heard Estrello's opinion that Griffin was untruthful during his initial interview, as well as evidence that Ashley was upset after the incident occurred, insisted that Griffin had touched her inappropriately, she was wearing appropriate clothing, and did not invite Griffin's advances or fabricate the allegations against him. Additionally, the jury heard evidence that Griffin was preoccupied with Ashley's clothing, gave two different accounts of what transpired, claimed that Ashley had acted provocatively toward him, and blamed Ashley for instigating the touching. Griffin's conduct itself is sufficient to infer the requisite intent. *See McKenzie*, 617 S.W.2d at 216; *see also Villanueva v. State*, 209 S.W.3d 239, 246 (Tex. App.—Waco 2006, no pet.) ("An oral expression of intent is not required; the conduct itself is sufficient to infer intent."). Viewing all the evidence in the light most favorable to the State, the jury could reasonably conclude, beyond a reasonable doubt, that Griffin engaged in sexual contact with Ashley, a child under age seventeen, with the intent to arouse or gratify his sexual desire. *See* Tex. Penal Code Ann. § 21.11(a), (c); *see also Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13. We overrule issue one.

5

Evidentiary Issues

In issues two, three, and four, Griffin argues that the trial court improperly excluded evidence challenging Ashley's veracity. We review a trial court's evidentiary decisions under an abuse of discretion standard. *Oprean v. State*, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006). "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]" Tex. R. Evid. 103(a); *see* Tex. R. App. P. 44.2(b). We will not reverse a conviction if we have "fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect." *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).

In this case, the trial court held a hearing pursuant to Texas Rule of Evidence 412 to address the admissibility of a prior false accusation that Ashley had made. During the hearing, J.W. testified to an incident when Ashley attempted to sit on his lap, but he "brushed her off." Ashley's father subsequently contacted J.W. because Ashley had accused J.W. of rape. Ashley later apologized to J.W. for accusing him of rape. Griffin argued that the allegations against him were similar to those against J.W., namely that Ashley's "advances were refused, and then the next thing she's accusing the person of rape or of sexual assault." He asserted that J.W.'s testimony was admissible under both Rule 412 of the Texas Rules of

Evidence and the Confrontation Clause. The trial court declined to admit J.W.'s testimony. On appeal, Griffin maintains that the trial court denied him the ability to attack Ashley's credibility, bias, self-interest, and motive in falsely accusing Griffin.

Texas Rule of Evidence 412 allows the admission of certain evidence regarding an alleged victim's past sexual behavior, but does not apply to indecency with a child cases. Tex. R. Evid. 412; *Reyna v. State*, 168 S.W.3d 173, 176 (Tex. Crim. App. 2005). Accordingly, we must determine whether the excluded evidence was admissible under other evidentiary rules. *See Hammer v. State*, 296 S.W.3d 555, 563-68 (Tex. Crim. App. 2009). Specific instances of a witness's conduct, for purposes of attacking the witness's credibility, other than conviction of crime, may not be inquired into on cross-examination nor proved by extrinsic evidence. Tex. R. Evid. 608(b). However, such evidence may be admissible to prove bias, self-interest, or motive for testifying. *Hammer*, 296 S.W.3d at 563. The right of cross-examination afforded by the United States and Texas Constitutions encompasses exposure of a witness's motivation for testifying and is offended if an evidentiary rule prohibits a defendant from cross-examining a witness concerning possible motives, bias, and prejudice such that he could not present a vital defensive theory. *Id*. at 562-63. "[T]he opponent must first cross-examine the witness with the

circumstances surrounding the bias, interest, or motive, and, if the witness denies the circumstances or the motive, the opponent may introduce extrinsic evidence to prove the motive or bias." *Id*. at 563; *see* Tex. R. Evid. 613(b).

On appeal, Griffin maintains that his defensive theory at trial was based on the fact that he told Ashley's parents about her misconduct on a prior occasion, and the "perceived threat that he would do it again, was the motive for falsely accusing Appellant." Because she had falsely accused another person out of retaliation in the past[,]" Griffin argues that the refusal to allow the jury to evaluate Ashley's bias, prejudice, or motive for accusing Griffin constitutes reversible error. However, the record does not indicate that, during Ashley's testimony, Griffin attempted to first cross-examine Ashley specifically regarding the circumstances of the situation with J.W. *See Hammer*, 296 S.W.3d at 563. Without first giving Ashley an opportunity to explain or to deny these circumstances, Griffin could not introduce extrinsic evidence, *i.e.*, J.W.'s testimony, to prove Ashley's motive or bias. *See id*.; *see also* Tex. R. Evid. 613(b) (When impeaching a witness by proof of bias or interest, and before further cross-examination or extrinsic evidence may be allowed, the circumstances supporting such claim or the details of such statement must be made known to the witness, and the witness must receive an opportunity to explain or to deny the circumstances or statement.). Additionally, the jury did hear

evidence that Griffin had reported some form of misconduct by Ashley to Ashley's parents; thus, the excluded evidence did not prevent Griffin from presenting his defense that the allegations against him were made in retaliation. *See Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005) (Although excluded testimony would have "incrementally furthered appellant's defensive theory[,]" because appellant was permitted to testify about her defensive theory, the excluded evidence did not prevent her from presenting a defense.). We overrule issues two through four.

In issues five and six, Griffin challenges the admission of outcry testimony from Ashley's mother, D.R.J., which he contends improperly bolstered Ashley's testimony. Before trial, the State filed a notice of intent to introduce hearsay statements pursuant to Texas Code of Criminal Procedure article 38.072. *See* Tex. Code Crim. Proc. art. 38.072 (West Supp. 2014). Griffin argues that (1) the trial court failed to conduct a hearing in accordance with article 38.072 only; and (2) article 38.072 only applies to child victims twelve years of age or younger. Assuming, without deciding, that the trial court abused its discretion by failing to hold a hearing and allowing D.R.J. to testify as an outcry witness, we cannot say that the error affected Griffin's substantial rights. *See* Tex. R. Evid. 103(a); *see also* Tex. R. App. P. 44.2(b). Ashley testified, without objection, to the details of the alleged offense. "'[O]utcry' testimony is necessarily cumulative of a

complainant's testimony." *Cordero v. State*, 444 S.W.3d 812, 820 (Tex. App.—Beaumont 2014, pet. ref'd) (quoting *Shelby v. State*, 819 S.W.2d 544, 551 (Tex. Crim. App. 1991)). Moreover, "improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial." *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Because the admission of D.R.J.'s testimony was harmless, we overrule issues five and six.

## Motion to Suppress

In issues seven and eight, Griffin contends that the trial court erred by denying his motion to suppress statements he made to police. "We review a trial court's ruling on a motion to suppress under a bifurcated standard of review." *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

> First, we afford almost total deference to a trial judge's determination of historical facts. The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. He is entitled to believe or disbelieve all or part of the witness's testimony--even if that testimony is uncontroverted--because he has the opportunity to observe the witness's demeanor and appearance.
>
> If the trial judge makes express findings of fact, we view the evidence in the light most favorable to his ruling and determine whether the evidence supports these factual findings. When findings of fact are not entered, we "must view the evidence 'in the light most favorable to the trial court's ruling' and 'assume the trial court made implicit

findings of fact that support its ruling as long as those findings are supported by the record.'"

Second, we review a trial court's application of the law of search and seizure to the facts *de novo*. We will sustain the trial court's ruling if that ruling is "reasonably supported by the record and is correct on any theory of law applicable to the case."

*Id*. at 447-48 (internal footnotes omitted).

Griffin made a verbal motion to suppress the video of his statement to police on grounds that he was not given warnings before the interview. Griffin testified that when law enforcement officers arrived at the scene of the offense, they instructed him to go to the police station. Griffin felt that he was in custody, so he was going to follow instructions. He drove to the station, followed by an officer. Griffin testified that he wanted to go home, but felt he had no choice.

Griffin testified that he did not feel free to leave once he went into the interrogation room and that Estrello did not mention that he could leave until fifteen or twenty minutes into the interview. At that point, Estrello read him the warnings and Griffin testified that he initialed the document without reading it. Griffin explained that he was intoxicated and concerned about his ill mother, felt intimidated and embarrassed, and wanted out of the police station. Because of his intoxication and mental state, he did not understand the warnings. He admitted that

11

he was never handcuffed. He testified that he did not believe that he had a choice as to whether to talk to Estrello and did not feel free to leave without permission.

Estrello testified that, before the interview, Griffin was advised that he could leave, but was not given *Miranda* warnings. He testified that when he arrived at the station, Griffin was alone in the waiting room. Estrello testified that he spoke with Griffin in the waiting room, told him what he had been accused of, and asked Griffin if he wanted to make a statement, to which Griffin agreed. He stated that had Griffin declined, he would have been free to leave. He explained that, before an interview, he always tells the interviewee that he is not under arrest and can leave at any time. A few minutes into the interview, Estrello advised Griffin of his constitutional rights and Griffin stated that he understood these rights, agreed to waive them and speak with Estrello, and signed the warnings. Estrello testified that Griffin was never placed in handcuffs or in custody. He further testified that Griffin was cooperative and did not act like he wanted to leave or mention wanting to leave. After the interview, Griffin was free to leave and did so.

The trial court found that a non-custodial interrogation occurred and denied the motion to suppress. On appeal, Griffin argues that his statements to Estrello were "obtained involuntarily and were the result of custodial interrogation." There are four general situations that may constitute custody: (1) the suspect is physically

12

deprived of his freedom in any significant way; (2) an officer tells the suspect he is not free to leave; (3) officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) probable cause exists to arrest the suspect and officers do not tell the suspect he is free to leave. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009).

The record does not demonstrate that Griffin was physically restrained or told that he was not free to leave. Additionally, as the sole judge of the credibility of the witnesses, the trial court was free to decide which evidence to believe. *See Valtierra*, 310 S.W.3d at 447. In doing so, the trial court could reasonably conclude that (1) officers at the scene of the offense asked Griffin to go to the police station and he agreed to do so; and (2) before the interview, Estrello advised Griffin that he could leave at any time and Griffin agreed to speak with Estrello. "[W]hen a person voluntarily accompanies police officers, who are then only in the process of investigating a crime, to a certain location, and he knows or should know that the police officers suspect he may have committed or may be implicated in committing the crime, we are unable to hold that under the circumstances such person is in custody." *Turner v. State*, 252 S.W.3d 571, 579-80 (Tex. App.— Houston [14th Dist.] 2008, pet. ref'd). "Once the circumstances show the person is acting upon the invitation, urging or request of police officers, and not the result of

13

force, coercion or threat, the act is voluntary and the person is not then in custody."
*Id*. at 580. Thus, we conclude that the trial court did not abuse its discretion by finding that Griffin's statement to Estrello was the result of a non-custodial interrogation. Because the trial court properly denied Griffin's motion to suppress, we overrule issues seven and eight and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on March 10, 2015
Opinion Delivered March 18, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.