In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00484-CR
_____

SCOTT HENRY KING, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 14-09-09857 CR

**MEMORANDUM OPINION**

A jury convicted Scott Henry King of aggravated sexual assault of a child. In two appellate issues, King challenges the admission of outcry testimony and the legal sufficiency of the evidence. We affirm the trial court's judgment.

Background

According to the record, King is married to E.S.'s step-grandmother. E.S. identified two instances of abuse. She recalled an occasion when King touched her pubic area with his hand, but she did not think his hand went inside her pubic area.

E.S. testified that on a different occasion, King placed his hand inside her underwear and touched her pubic area with his hand.

E.S.'s mother testified that E.S. told her that King sometimes placed his hands inside her pants and she did not like it. E.S. gave her mother no details. E.S.'s grandmother testified that E.S. told her that King had placed his fingers inside her vagina, this had happened before, and she did not like it and wanted it to stop. Tiffani Dusang, a forensic nurse examiner, testified that she examined E.S. and E.S. told her that King touched her "tata" with his fingers on more than one occasion and that she did not like it. Rachel McConnell with Children's Safe Harbor testified that E.S. told her that "she had been touched in the wrong spot by . . . Papa Scott." E.S. told McConnell about an instance when she was snuggling on the couch with King in King's camper when King placed his hand inside her underwear and touched her vagina. E.S. also told McConnell about an incident, that occurred a couple weeks before the interview, when she went into King's bedroom in King's camper to snuggle with him and King pulled her on top of him, placed his hand inside her underwear, touched her vagina and buttocks with his hand, placed his finger inside her vagina, and touched her stomach with his penis. E.S. indicated that the touching occurred more than twice but she only fully described these two instances.

E.S.'s mother testified that, after E.S.'s disclosure, King came to her home and said, "I'm sorry. I don't know if I did this. . . . I don't know. I'm sorry. I just want to make things right." E.S.'s stepfather testified that King appeared drunk and smelled of alcohol. He recalled King saying, "I don't know what I've done. Let's make it even. Just come over here and do it. Just beat my a--. Let's get it over with." E.S.'s mother recorded part of the encounter. Detective Todd Hoff testified that the recording evidenced "blame shifting" because King blamed his behavior on intoxication. King testified that he went to E.S.'s home to try to work things out. He apologized to her parents because of what they were going through with E.S.

Ryan Wall testified that King told him that E.S. threw herself all over King. King also told Wall that because he blacks out from drinking, there was a twenty percent chance that he committed the abuse. Wall testified that King also said that he "could have done it." According to King, his "blackouts" refer to forgetting where he placed his credit card or keys and he has never been medically treated for blackouts. He explained that he told Wall there was an eighty percent chance that a jury would find him innocent and a twenty percent chance that a jury would find him guilty, not that there was a twenty percent chance he committed the offense.

He also testified that he merely told Wall that E.S. was "bold about jumping on you without warning."

During his testimony, King denied molesting E.S. He and his wife Rhonda both testified that they did not live in the camper when the first incident allegedly occurred. Regarding the most recent incident, King recalled E.S. jumping on him once when he was still in bed and he explained that he needed to use the restroom and that E.S. felt his erection. King pushed E.S. off and went to the restroom. He testified that E.S. was in and out of the camper that day and that he never consumed any alcohol during the day. He testified that the camper door was always open and that, because of the location of the door and mirrors in the camper, the bedroom and living room can be seen. King also testified that he never allowed his grandchildren to get under the covers with him. Rhonda testified that E.S. was outside with Rhonda for the majority of the day. She testified that people were in and out of her home that day, E.S.'s cousin was with her the entire time, and the door to her home was open all day; thus, Rhonda opined that King had no opportunity to harm E.S. According to Rhonda, E.S. loved visiting and did not want to go home that day.

Rhonda also testified that when she first learned of the accusations against King, she prepared to leave him for fear she would not be allowed to see her

grandchildren. When King arrived home, he was upset and told Rhonda that he did not harm E.S. She testified that King went to the police. Rhonda explained that she is present ninety percent of the time when the children are around King.

Rhonda also testified that she instructed King not to drink when the grandchildren visited. She testified that King is allowed to have a couple of drinks when the children are around but he does not blackout after a few drinks and should be able to recall whether he molested E.S. King testified that he has a drinking problem, attends Alcoholics Anonymous classes, and plans to go to a long-term treatment facility.

King's stepdaughter, Blair Wall, testified that King is a good person and has her support. Rhonda testified that she never felt uncomfortable with King being around her children or her grandchildren. She testified that King is truthful, but E.S. is not. Laura Corley, on whose property King's camper is located, testified that she never had a reason to worry about King being around children. King's stepdaughter, Brandy Keith, testified that she would allow King around her daughter and that King would not molest a child. Brian Nixon testified that King has babysat his children, he has never had concerns about King being around his children, and he would still have no concerns even after knowing about the charges against King. King's daughter and grandson both testified that they never had

5

reason to fear King. King's son testified that he never had concerns about King being around his children and has never seen King act inappropriately around children. Several witnesses, including King's stepdaughter, daughter, son, and grandson, opined that King is truthful and is not a sex offender.

Legal Sufficiency

In issue two, King argues that the evidence is insufficient to support his conviction. Under a legal sufficiency standard, we assess all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We give deference to the jury's responsibility to fairly resolve conflicting testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. We address this issue first because, if granted, it would afford the greatest relief.

A person commits aggravated sexual assault of a child by intentionally or knowingly causing the penetration of the child's sexual organ by any means and the victim is younger than fourteen years of age. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (2)(B) (West Supp. 2014). On appeal, King argues that the jury could not have found E.S.'s testimony credible because she (1) "gave unfounded

testimony of whether she was on top of the bed or under the covers" when the abuse occurred; (2) behaved normally and went to wake up King even after he supposedly made her uncomfortable; and (3) told McConnell that she was "touched in an inappropriate spot[,]" which King argues suggests coaching.

The jury heard E.S.'s testimony that King touched her in her pubic area. The jury also heard evidence that, after E.S.'s disclosure, King made statements such as "I don't know if I did this[,]" "I don't know what I've done[,]" E.S. threw herself all over him, there was a twenty percent chance that he committed the abuse, and he "could have done it." Dr. Lawrence Thompson, a psychologist, testified that children do not always immediately come forward to disclose abuse, that it is not uncommon for a child to still love her perpetrator, and that an abused child will not necessarily act depressed or sad. McConnell also testified that it is common for children to be unable to narrate all the events of sexual abuse and to love their perpetrators.

A child victim is "afforded great latitude when testifying and [is] not expected to testify with the same clarity and ability as is expected of a mature and capable adult." *Hiatt v. State*, 319 S.W.3d 115, 121 (Tex. App.—San Antonio 2010, pet. ref'd). As sole judge of the weight and credibility of the evidence, the jury bore the burden of resolving any discrepancies in E.S.'s testimony and, in

doing so, was entitled to reject King's testimony. *See Hooper*, 214 S.W.3d at 13. E.S.'s testimony, standing alone, was sufficient to support King's conviction. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978). We decline King's invitation to reexamine the jury's credibility determinations. *See Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993) (In a legal sufficiency review, we do not reevaluate the weight and credibility of the evidence.). Viewing all the evidence in the light most favorable to the State, the jury could reasonably conclude, beyond a reasonable doubt, that King committed the offense of aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (2)(B); *see also Jackson*, 443 U.S. at 318-19; *Hooper*, 214 S.W.3d at 13. We overrule issue two.

## Outcry Witnesses

In issue one, King contends that the trial court improperly allowed McConnell, E.S.'s mother, and Dusang to testify to E.S.'s outcry statements. We review the admission of outcry evidence under an abuse of discretion standard. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. Tex. R. Evid. 103(a); *see* Tex. R. App. P. 44.2(b).

Assuming, without deciding, that the trial court abused its discretion by admitting the complained-of testimony, we cannot say that the error affected King's substantial rights. E.S. testified to the details of the charged offense. "'[O]utcry' testimony is necessarily cumulative of a complainant's testimony." *Cordero v. State*, 444 S.W.3d 812, 820 (Tex. App.—Beaumont 2014, pet. ref'd) (quoting *Shelby v. State*, 819 S.W.2d 544, 551 (Tex. Crim. App. 1991)). Moreover, "improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial." *Chapman v. State*, 150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). As discussed previously, E.S.'s testimony alone supports King's conviction even without the complained-of evidence. *See Garcia*, 563 S.W.2d at 928. Because any error in admission of the complained-of testimony is harmless, we overrule issue one and affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on September 14, 2015
Opinion Delivered September 23, 2015
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.