# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-17-00420-CR
_____

## NATHAN VICTOR ATKINS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court
Jefferson County, Texas
Trial Cause No. 16-25973**

## MEMORANDUM OPINION

A jury convicted appellant Nathan Victor Atkins of indecency with a child
and assessed punishment at twenty years of confinement.[1] In five appellate issues,
Atkins challenges the trial court's jurisdiction, the admission of the victim's outcry
pursuant to article 38.072 of the Texas Code of Criminal Procedure and Rule
801(e)(1)(B) of the Texas Rules of Evidence, and the exclusion of evidence

_____

[1]Atkins was indicted for continuous sexual abuse of a child, but the jury found
him guilty of the lesser included offense of indecency with a child.

1

regarding CPS's investigation of the incident and a law enforcement officer's opinion concerning the viability of prosecuting Atkins. We affirm the trial court's judgment.

The victim, S.S., testified that her mother began seeing Atkins when S.S. was six or seven years old.[2] According to S.S., Atkins sexually abused and molested her for approximately five to six years. S.S. testified that Atkins put his hand down her pants "where it was skin to skin contact" and rubbed his hand on the outside of her genitals. S.S. explained that the abuse usually occurred on the couch in the living room of her home, where Atkins would lie down covered with a blanket. S.S. testified that the abuse occurred "a couple of times a week[]" until she was eleven or twelve years old.

Over defense counsel's objection, the trial court allowed S.S. to testify that when she was ten or eleven years old, Atkins lifted her shirt, looked at her breasts, and kissed her breasts. S.S. testified that when she realized how wrong the abuse was, she feared that it would hurt her mother, so she delayed making an outcry. S.S. explained that while she was attending a church convention in the summer of 2016, when she was fifteen years old, a speaker encouraged any victims of abuse to tell

---

[2]During cross-examination, S.S. testified that it "may have been" mentioned to her later that she was eight years old when her mother met Atkins.

2

someone, and she decided to do so. S.S. explained that her outcry to youth minister Matthew Champagne at the conference was the first time she told anyone over the age of eighteen about the abuse. S.S. then met with a priest regarding the abuse, and the priest informed her that he was required to inform Child Protective Services ("CPS"). When S.S. got home from the conference, she reported the abuse to her mother and father.

Over defense counsel's objection and after conducting a hearing, the trial court permitted Champagne to testify as an outcry witness under article 38.072 of the Texas Code of Criminal Procedure and as an exception to the hearsay rule. The trial court also determined that under Rule 403 of the Texas Rules of Evidence, the probative value of the testimony was not "substantially outweighed by its prejudicial effect." Champagne then testified that S.S. told him she had been abused. Champagne explained that he immediately contacted the female head youth minister, and Champagne related that S.S. said "she was touched inappropriately in places where a 6-year-old should not be touched, I believe, were her exact words." According to Champagne, S.S. stated that the abuse had continued until she was approximately twelve years old, when she understood that she should not be touched that way. Champagne testified that S.S. had identified the perpetrator as her

3

stepfather, Atkins. Champagne explained that he and the head youth minister contacted the priest, and Champagne contacted CPS.

L.S., S.S.'s mother, testified that when S.S. returned from the retreat, L.S. met S.S. and the priest at the church. According to L.S., when S.S. left the church, L.S. called Atkins and told him that he needed to come to the church office. L.S. testified that when Atkins arrived, she asked him if he had touched S.S. inappropriately, he responded, "'Yes. I'm so glad it's out.'" L.S. also testified that she recalled seeing Atkins and S.S. sitting on a couch underneath a blanket. When defense counsel began to ask L.S. whether she received a letter from CPS that changed the designation of the case regarding S.S. from "unable to determine[,]" the prosecutor objected that the letter to which defense counsel referred had not been admitted into evidence, and the trial court sustained the objection. When defense counsel attempted to tender the letter into evidence, the trial court sustained the prosecutor's objection that the document had not been properly authenticated. The trial judge stated, "it's not admitted because . . . the foundation properly under the law has not been laid for it and it's a product of hearsay and there has to be an exception to the hearsay rule because she's not the one who authored it."

Defense counsel then began to ask L.S. whether she received a letter or "two different letters" from CPS, and the trial judge again sustained the prosecutor's

4

hearsay objection. The trial judge explained that the fact that the witness received a letter is not hearsay, but questioning regarding the wording in the letter "is inadmissible unless the foundation is properly laid[.]" The trial judge stated, "anything inferring what was in the letter[s], including a disparity between them, jumps right into a product of a hearsay." Defense counsel then passed the witness.

S.S.'s priest testified that Atkins told him, "it only happened once, and it was when he was under the influence of medication. He had fallen at work; and it was a curiosity thing, he said." The priest explained, "I had the impression that he had touched her. He didn't say that[,] but he said it only happened once and he didn't go into detail." S.S.'s priest testified, "I don't think there was any ambiguity about what the accusation was[,]" and he explained that he believed Atkins was saying that the abuse occurred because of S.S.'s curiosity. The priest explained that Atkins did not explicitly state that he had inappropriately touched S.S., but Atkins did state that something happened.

Detective John Hudson of the Groves Police Department testified that after receiving a referral from CPS, he interviewed S.S. when she was fifteen years old. Hudson explained that delayed outcry is "pretty normal" and can be due to several factors. Hudson contacted several witnesses and obtained their statements. During cross-examination, defense counsel began to ask Hudson whether, before submitting

the case to the district attorney's office, he ever "expressed any doubt[.]" The prosecutor interrupted defense counsel's cross-examination with a relevancy objection, and the trial judge sustained the objection and stated, "[i]t's for the jury to decide, and we're not going to invade their domain with opinions by others." Defense counsel then passed the witness.

After the State rested, Atkins testified that he had never been under a blanket with S.S. Atkins denied raising S.S.'s shirt and commenting about her breasts, and he testified that S.S. would raise her shirt to try to get his attention as "a curiosity thing[]" on S.S.'s part. In addition, Atkins denied saying "Yes, and I'm glad it's finally out" or anything similar when L.S. confronted him at the church. Atkins also denied saying that a curiosity-type incident happened when he was under the influence of medication. Atkins testified that S.S. looked under the sheets when he was in bed and tried to walk into the bathroom when he was in the shower. During cross-examination, Atkins testified that although he does not have children, he met S.S.'s mother on a website called singleparentmeet.com. According to Atkins, S.S., L.S., and the priest are lying. The defense rested at the end of Atkins's testimony.

## ISSUE FIVE

In issue five, which we address first, Atkins argues that the trial court lacked jurisdiction to convict him for indecency with a child "due to the State's failure to

6

properly amend the indictment to allege that offense." Specifically, Atkins argues that in response to his motion to quash, in which he asserted that the indictment was deficient because it merely alleged indecency as a predicate act to the indicated offense of continuous sexual abuse of a young child, the trial court granted the State's motion to amend the indictment. According to Atkins, the appellate record does not reflect that the indictment was amended, either on the original indictment or a photocopy thereof.

As the State points out, after Atkins filed his brief, a supplemental clerk's record was filed which indicates that the amendments requested in the State's motion to amend the indictment were, in fact, handwritten onto the face of the indictment. The supplemental record shows that the indictment was amended to allege that Atkins touched the genitals of S.S. with the intent to arouse or gratify his sexual desire under section 21.11(a)(1) of the Texas Penal Code. In his reply brief, Atkins concedes that "the supplemental clerk's record undermines the viability of his fifth point of error."

We conclude that the trial court had jurisdiction because the amended indictment properly alleges the lesser-included offense of indecency with a child. *See* Tex. Code Crim. Proc. Ann. art. 28.10 (West 2006) (setting forth circumstances under which an indictment may be amended); *see also* Tex. Penal Code Ann. §

7

21.11(a)(1) (West Supp. 2017) (stating the elements of the offense of indecency with a child).[3] Accordingly, we overrule issue five.

## ISSUES ONE AND TWO

In issue one, Atkins contends the trial court abused its discretion by admitting S.S.'s outcry under article 38.072 of the Texas Code of Criminal Procedure, and in issue two, Atkins argues the trial court abused its discretion by admitting S.S.'s outcry under Rule 801(e)(1)(B) of the Texas Rules of Evidence. We review the admission of outcry evidence under an abuse of discretion standard. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). A party may claim error as to a ruling to admit or exclude evidence only if the error affects a substantial right of the party. Tex. R. Evid. 103(a); *see* Tex. R. App. P. 44.2(b). "The testimony of a child victim alone is sufficient to support a conviction for indecency with a child." *Navarro v. State*, 241 S.W.3d 77, 81 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Assuming without deciding that the trial court abused its discretion by admitting the complained-of testimony, we cannot say that the error affected Atkin's substantial rights. S.S. testified regarding the details of the charged offense. "'[O]utcry' testimony is necessarily cumulative of a complainant's testimony." *Cordero v. State*,

---

[3]Because the amendments to section 21.11 do not materially affect the outcome of this appeal, we cite to the current version of the statute.

444 S.W.3d 812, 820 (Tex. App.—Beaumont 2014, pet. ref'd) (quoting *Shelby v. State*, 819 S.W.2d 544, 551 (Tex. Crim. App. 1991)). In addition to S.S.'s testimony alone, which was sufficient to support Atkins's conviction even without the complained-of outcry evidence, the jury also heard the priest testify regarding admissions made by Atkins. *See Motilla v. State*, 78 S.W.3d 352, 358 (Tex. Crim. App. 2002); *Navarro*, 241 S.W.3d at 81. We conclude that any error in admission of the complained-of outcry testimony did not affect Atkins's substantial rights. *See* Tex. R. Evid. 103(a); *see* Tex. R. App. P. 44.2(b). Accordingly, we overrule issues one and two.

ISSUES THREE AND FOUR

In issue three, Atkins complains of the trial court's exclusion of evidence regarding CPS's investigation of the incident, and in issue four, Atkins challenges the trial court's exclusion of evidence regarding a law enforcement officer's opinion concerning the viability of prosecuting Atkins. We address issues three and four together.

We review the trial court's rulings excluding evidence for abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). We will not overturn the trial court's evidentiary ruling if it is correct under any applicable theory of law. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). To

9

demonstrate error, an appellant must demonstrate that the ruling "was so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). In addition, as discussed above, a party may claim error as to a ruling excluding evidence only if the error affects a substantial right of the party. Tex. R. Evid. 103(a); *see* Tex. R. App. P. 44.2(b).

In his brief, Atkins asserts that letters regarding the outcome of the CPS investigation were admissible under the rule of optional completeness because the State allegedly emphasized the CPS investigation at trial, and he contends that evidence regarding Hudson's opinion of the viability of prosecuting Atkins was admissible and would not have invaded the province of the jury. As discussed above, during the testimony of L.S., Atkins sought to introduce letters from CPS regarding CPS's investigation. Defense counsel did not properly authenticate the letters, nor did he demonstrate that an exception to the hearsay rule permitted the introduction of the letters into evidence. *See* Tex. R. Evid. 801, 901, 902. With respect to evidence regarding Hudson's opinion, defense counsel never completed his question to Hudson to indicate what information counsel sought to elicit. Defense counsel did not inform the court of the substance of the evidence by an offer of proof, and the substance was not apparent from the context. *See* Tex. R. Evid. 103(a)(2) (providing

10

that when a party complains of a ruling excluding evidence, the party must inform the court of the substance of the evidence by an offer of proof unless the substance was apparent from the context). Furthermore, we conclude that even if a proper record had been made regarding the substance of the testimony Atkins sought to elicit from Hudson, it was not admissible. *See* Tex. R. Evid. 701 (providing that a lay witness may only offer opinion that is rationally based on his perception and is helpful to understanding his testimony or determining a fact in issue); *Boyde v. State*, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974) (holding that no witness is competent to state an opinion regarding the guilt or innocence of the accused).

We conclude that the trial court did not err by excluding evidence regarding letters from CPS and Hudson's opinion about Atkins's guilt or innocence, but even if the trial court had erred by excluding this evidence, Atkins has not demonstrated that his substantial rights were affected. *See* Tex. R. Evid. 103(a); Tex. R. App. P. 44.2(b). For all these reasons, we overrule issues three and four. Having overruled each of Atkins's appellate issues, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

11

Submitted on September 4, 2018
Opinion Delivered October 17, 2018
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.