COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| WILLIAM SHAWN WALDREP, | § | No. 08-19-00027-CR |
| Appellant, | § | Appeal from the |
| v. | § | 90th Judicial District Court, |
| THE STATE OF TEXAS, | § | of Young County, Texas |
| Appellee. | § | (TC#11080) |

## **O P I N I O N**

Appellant William Shawn Waldrep was found guilty by a jury on one count of continuous sexual abuse of a child under 14 years of age and sentenced to 99 years in prison. In his sole issue on appeal, he contends that the trial court erred by allowing into evidence the victim's outcry statement to her mother. Finding no error in that ruling, we affirm the trial court's judgment.[1]

### I. PROCEDURAL AND FACTUAL BACKGROUND

Appellant was charged with the continuous sexual abuse of a child under age 14 by causing the penetration of the mouth of the victim by his sexual organ over a two-and-a-half-year period.[2]

---

[1] This case was transferred to us from the Second Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. We apply the precedents from that court where they might conflict with our own. TEX.R.APP.P. 41.3.

[2] TEX.PENAL CODE ANN. § 21.02 (criminalizing the commission of two or more specified acts of sexual abuse committed over a thirty-day or more period of time).

The victim in the case, L.M., was the daughter of Appellant's then-girlfriend (hereinafter "Mother"). Appellant had been living with Mother since 2014. L.M. made her first outcry when she was seven years old to her then nine-year-old brother, telling him that Appellant had put his penis in her mouth. Her brother, however, did not believe L.M. and did not tell anyone about her allegation. About a year later, L.M. made a second statement to her brother, again telling him that Appellant had put his penis, or his "thing", in her mouth. This time, the brother reported that statement to Mother. She then questioned L.M. and asked her what had occurred, encouraging her to be truthful in her response. As discussed in more detail below, L.M. then made an outcry statement that caused Mother to believe that Appellant had sexually abused her daughter. Mother, however, did not immediately confront Appellant about the allegation, nor did she report her concerns to law enforcement.[3]

In February of 2017, L.M.'s school made a report to Child Protective Services ("CPS") after it discovered that L.M. had used inappropriate search terms and may have watched pornography on a school issued computer. During an ensuing CPS investigation, Mother told the CPS investigators about the prior outcries of sexual abuse that L.M. had made to her and her brother. L.M. was then questioned by forensic interviewer Tivoli Williams. During the interview, L.M. was initially talkative, but withdrew and would not respond when asked questions about "parts of [her] body" and "touching," and she did not make an outcry to Williams. However, that same day, Williams also interviewed L.M.'s brother who confirmed L.M.'s first and second report of the matter to him. In both reports, L.M. had described to her brother what

---

[3] During a December 2016 Child Protective Services investigation, the mother acknowledged that she and Appellant had been long-time methamphetamine users, and the two had been involved in several domestic disturbances, including one incident in which Appellant had broken Mother's toe and pointed a gun at her. She testified at trial that she delayed making any report because of this and co-dependency issues.

2

could only be oral sex.

During this same time period, L.M. received counseling, but refused to speak to her therapist about the incident. However, in late March of 2017 L.M. gave her therapist a journal entry that she had written, which was introduced into evidence at trial, stating that "[Appellant] made me suck his dick[.]" Shortly thereafter, Mother also learned that L.M. had disclosed the abuse to several of her classmates, who in turn reported it to their teacher. In addition, both L.M.'s therapist and Mother testified that they noticed changes in L.M.'s behavior during this same time period. L.M. became clingy, she was upset when left alone with Appellant, and she began to have frequent stomach aches. The therapist explained that these characteristics are common in child victims of sexual abuse.

On May 2, 2017, L.M. was interviewed by Melissa Beard, a second forensic interviewer. The night before the interview, at Mother's suggestion, L.M. wrote in her journal what had happened to her. The journal entry, which was admitted into evidence, graphically described how Appellant had L.M. perform oral sex on him. At the forensic interview, L.M. described three to four specific incidents involving the same act, at different locations and times.

That same day, L.M. underwent a Sexual Assault Nurse Exam ("SANE exam"). L.M. initially stated that she did not want to speak about the incident but agreed to write down what had occurred. L.M. circled the image of the male penis on an anatomical picture and wrote the words "[p]rivate part in my mouth." L.M. thereafter informed the SANE examiner that Appellant had committed this act four times at her mother's house, all while her mother was either asleep or not at the house. In addition, L.M. stated that "[s]tuff came out of his privates when he put it in my mouth." L.M. also told the SANE examiner that she had been reluctant to make an outcry against Appellant, as she feared she would get in trouble for doing so. The SANE examiner testified that

3

this is a common fear expressed by child victims of sexual abuse. And finally, L.M. testified at trial that Appellant had committed the acts that she had described in her journal entries over the course of at least a year, verifying that she had made the journal entries herself. L.M. recalled that she told her brother on two occasions what Appellant had done, including approximately when and where she made the outcries. Her testimony corroborated two other events that the jury had heard about: that L.M.'s mother talked to her after the second outcry to her brother, and that L.M. told two of her friends at school. L.M. further explained that she did not initially disclose the abuse to the first forensic interviewer because at the time she was still having a hard time talking about it.

Appellant defended against the charge through cross examination of the State's witnesses, and by calling his own friends who testified that his interactions with L.M. all appeared appropriate, or that Appellant is not the type of person to commit this act. Appellant also developed testimony that at one time Mother had denied to others that L.M. had ever been sexually assaulted.

The jury found Appellant guilty of one count of continuous sexual abuse of a child under 14 years of age and sentenced him to 99 years in prison. This appeal followed.

## II. DISCUSSION

In his sole issue on appeal, Appellant argues that the trial court erred in allowing Mother to testify about L.M.'s outcry to her, arguing that it constituted inadmissible hearsay. In particular, Appellant contends that the outcry testimony was neither sufficiently specific nor reliable to satisfy the outcry exception to the hearsay rule found in Article 38.072 of the Texas Code of Criminal Procedure. He further argues that the admission of the testimony was harmful to his case.

## A. Applicable Law and Standard of Review

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex.Crim.App. 2011), *citing* TEX.R.EVID. 801(d). Hearsay is inadmissible unless it falls into one of the exceptions in Rules of Evidence 803 or 804, or it is allowed by "other rules prescribed under statutory authority." *Id. citing* TEX.R.EVID. 802. One of the "other rules" is found in Article 38.072 of the Code of Criminal Procedure, which provides for the admission of certain out-of-court "outcry" statements. Relevant here, that Article applies to statements that (1) describe the alleged offense, (2) were made by a child victim who is younger than 14 years of age, and (3) the defendant is charged with certain enumerated offenses. TEX.CODE CRIM.PROC. art. 38.072, § 2(a)(1), (2). Continuous sexual abuse of a child is one of those enumerated offenses. *Id.* at 38.072, § 1(1). Further, Article 38.072 specifically provides that the statement must be one made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense. *Id.* at 38.072, § 2(a)(3). Procedurally, the State cannot introduce the statement until the trial court holds a hearing outside the presence of the jury to determine whether the statement is "reliable based on the time, content, and circumstances of the statement." *Id*. at 38.072, § 2(b)(2). In addition, the child must testify at trial or be available to testify at the trial. *Id.* at 38.072, § 2(b)(3). Outcry testimony admitted in compliance with Article 38.072 is considered substantive evidence, admissible for the truth of the matter asserted in the testimony. *Duran v. State*, 163 S.W.3d 253, 257 (Tex.App.--Fort Worth 2005, no pet.).

We review a trial court's determination whether an outcry statement is admissible under Article 38.072 for an abuse of discretion. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex.Crim.App. 1990) (en banc). A trial court only abuses its discretion in admitting outcry testimony if its

decision falls outside the zone of reasonable disagreement. *Gonzales v. State*, 477 S.W.3d 475, 479 (Tex.App.--Fort Worth 2015, pet. ref'd), *citing Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (en banc) (op. on reh'g).

### B. Analysis

Consistent with Article 38.072, the trial court held a hearing on the admission of the outcry L.M. made to Mother. At the hearing, Mother testified as the sole witness. The trial court determined the outcry was admissible.

### 1. Error Preservation

At the close of the Article 38.072 hearing, Appellant objected to the admission of the outcry statement as violative of the "hearsay rule, confrontation, due process, and due course of law." The trial court overruled these objections. On appeal, the State first urges that Appellant's objection did not expressly raise the issue briefed on appeal: whether the outcry was sufficiently specific or reliable so as to satisfy the requirements of Article 38.072 § 2(a)(1)(A) and § 2(b)(2). The State therefore argues that Appellant forfeits the error.

Generally, to preserve a complaint for appellate review, there must be a timely and specific trial objection to the complained of action of the trial court. *Davis v. State*, 313 S.W.3d 317, 347 (Tex.Crim.App. 2010). Additionally, the record must show that the objection was sufficiently specific to make the trial court aware of the complaint unless the specific grounds were apparent from the context. TEX.R.APP.P. 33.1(a)(1)(A); TEX.R.EVID. 103(a)(1); *see also Lovill v. State*, 319 S.W.3d 687, 691-92 (Tex.Crim.App. 2009). An objection stating one legal basis may not be used to support a different legal theory on appeal. *See e.g., Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex.Crim.App. 2004) (en banc). A party meets the specificity requirement if the party's complaint to the trial judge was clear enough for the trial judge to take corrective action when the

6

complaint was made. *Lovill*, 319 S.W.3d at 691.

The State contends that an objection to hearsay does not preserve a complaint that the State failed to meet some specific predicate requirement under Article 38.072. Apparently, there is a split in the courts of appeals on that issue. *See Zarco v. State*, 210 S.W.3d 816, 828 (Tex.App.--Houston [14th Dist.] 2006, no. pet.) (collecting cases on both sides of issue). We are cited to no cases from this Court or the Second Court of Appeals precisely addressing the issue. Based on the record, and argument presented, however, we conclude that Appellant made it clear to the trial court that he did not believe that the State met the requirements of Article 38.072. Thus, the issue raised here was sufficiently preserved for review. *See Long v. State*, 800 S.W.2d 545, 548 (Tex.Crim.App. 1990) (en banc) (defendant's hearsay objection preserved complaint that trial court erred in not conducting Article 38.072 hearing, because the State carried the burden to fully comply with the Article to overcome hearsay); *Cordero v. State*, 444 S.W.3d 812, 818 (Tex. App.--Beaumont 2014, pet. ref'd) (general hearsay objection sufficient to raise claimed failure of State to disclose outcry statement in advance of trial as required by Article 38.072).

### 2. Specificity

Appellant first contends that L.M.'s outcry statement to her Mother failed to describe the alleged offense as required by Article 38.072. *See* TEX.CODE CRIM.PROC.ANN. art. 38.072 § 2(a)(1)(A). This requirement has been construed to mean that an outcry statement must be "more than words which give a general allusion that something in the area of child abuse was going on." *Garcia,* 792 S.W.2d at 91; *Nino v. State*, 223 S.W.3d 749, 752 (Tex.App--Houston [14th Dist.] 2007, no pet.)

During the hearing, Mother testified that L.M.'s brother advised her of L.M.'s statement that Appellant had placed his "thing" in her mouth. Mother testified that she then confronted

7

L.M., who told her that when Mother left for the store, Appellant had entered her room, unzipped his pants, told her to open her mouth, pushed down on the back of her head, and told her to close her eyes. Appellant contends that Mother's initial testimony did not include any indication that L.M. had informed her personally--rather than just her brother--that Appellant had placed his penis in her mouth. Appellant concludes that L.M. never actually described the actual alleged offense. We disagree.

The record shows that at the hearing the prosecutor asked Mother a series of clarifying questions that do suggest that L.M. in fact described the insertion of Appellant's sexual organ into her mouth. The record from the Article 38.072 hearing includes these exchanges:

> [PROSECUTOR]: And, again, when you said that she talked about unzipping his pants and putting his thing in her mouth, do you know what she was referring to when she said "thing"?
>
> [MOTHER]: She was referring to his penis.
>
> . . .
>
> [PROSECUTOR]: Okay. So just to make sure we understand your testimony, your daughter . . . described a sexual act referring to the defendant inserting his penis in your daughter [L.M.'s] mouth when she was eight years of age; is that correct?
>
> [MOTHER]: I believe she was six when it happened.
>
> [PROSECUTOR]: When it started?
>
> [MOTHER]: Yes, ma'am.
>
> [PROSECUTOR]: But as far as she was eight years of age --
>
> [MOTHER]: When she made the outcry.
>
> [PROSECUTOR]: -- when she told you about it?
>
> [MOTHER]: Yes, ma'am.

Appellant asks us to discount these follow-up responses because they were the product of

8

leading questions. But even if the questions were leading, Appellant never made this objection at the hearing, and Appellant does not explain why we must now ignore the un-objected testimony on appeal. We conclude that the trial court did not abuse its discretion in concluding that L.M. sufficiently described the alleged offense to her Mother within the meaning of Article 38.072. *See, e.g., Rainey v. State*, 763 S.W.2d 470, 471-73 (Tex.App.--Houston [14th Dist.] 1988, no pet.) (finding that child's statement was sufficiently specific to meet the requirements of Article 38.072 where child told mother in language appropriate for a child of that age that defendant "put his thing in [her]"); *Rodriguez v. State,* 997 S.W.2d 640, 642 (Tex.App.--Corpus Christi 1999, no pet.) (finding social worker's outcry testimony was properly admitted under Article 38.072, where child told social worker that defendant put his "private part" into her "private part").

## 2. Reliability

Appellant next contends that the trial court erred in determining that Mother's outcry testimony was reliable as required by Article 38.072 In an Article 38.072 hearing, a trial court is in part tasked to determine, "based on the time, content and circumstances of the statement, [whether] the outcry is reliable." *See Sanchez*, 354 S.W.3d at 488. The Fort Worth Court of Appeals has described a non-exhaustive list of several factors that a court may consider in determining whether an outcry statement is reliable, including:

> (1) whether the child victim testifies at trial and admits making the out-of-court statement, (2) whether the child understands the need to tell the truth and has the ability to observe, recollect, and narrate, (3) whether other evidence corroborates the statement, (4) whether the child made the statement spontaneously in his own terminology or whether evidence exists of prior prompting or manipulation by adults, (5) whether the child's statement is clear and unambiguous and rises to the needed level of certainty, (6) whether the statement is consistent with other evidence, (7) whether the statement describes an event that a child of the victim's age could not be expected to fabricate, (8) whether the child behaves abnormally after the contact, (9) whether the child has a motive to fabricate the statement, (10) whether the child expects punishment because of reporting the conduct, and (11) whether the accused had the opportunity to commit the offense.

*Gonzales,* 477 S.W.3d at 479. Although these factors are helpful, our focus must be on the key issue of whether the trial court properly found the statement reliable, considering the "time, content and circumstances" under which it was made. *See, e.g., Buentello v. State*, 512 S.W.3d 508, 518-19 (Tex.App--Houston [1st Dist.] 2016, pet. ref'd). Appellant addresses some, but not all of these factors.

Appellant first contends that the content of L.M.'s outcry statement was too vague to be considered reliable, contending that L.M. did not provide her Mother with any details about the events leading up to the abuse or what happened in the days following. Appellant also faults Mother for not relating anything that Appellant is reported to have said around the time of the alleged sexual abuse. As the State points out, however, Appellant cites no authority for the proposition that an outcry statement must contain these details in order to be considered reliable, nor are we aware of any.

As to the substance of the argument, we first note that Mother specifically testified at trial that she did not confront Appellant after L.M. made her outcry, so his reaction at that time is hardly germane. Moreover, Mother did testify at the Article 38.072 hearing that L.M. provided specific details describing the abuse itself, i.e., that Appellant had put his "thing", or his penis, in her mouth, as well as the events immediately leading up to the abuse, including the fact that Appellant had entered her room after Mother left for the store, had unzipped his pants, had told L.M. to open her mouth and close her eyes, and then pushed down on the back of her head. The statement was not too vague so as to fail the reliability test. *See, e.g., Gonzales*, 477 S.W.3d at 479 (child victim's statement to witness that Appellant had both touched and penetrated her genitals with his fingers, although "very short," was nevertheless "very clear, specific, and unequivocal," and could therefore be considered reliable in nature).

10

Appellant also contends that the State failed to present any evidence that L.M.'s outcry statement was made "spontaneously." Rather, he argues the outcry was made in response to her Mother's questioning long after the events in question. While spontaneity is a consideration relevant to the reliability of an outcry statement, it is not an admissibility requirement in and of itself. *Lumsden v. State*, 564 S.W.3d 858, 881 (Tex.App--Fort Worth 2018), *cert. denied*, 139 S.Ct. 2018, (2019), *citing Thomason v. State*, No. 07-97-00146-CR, 1998 WL 761883, at *7 (Tex.App--Amarillo Nov. 2, 1998, pet. ref'd) (not designated for publication). More importantly, while L.M.'s statement to her mother may not have been spontaneous, there is no direct suggestion that Mother manipulated L.M. into making a false or fabricated statement. To the contrary, Mother testified at the hearing that she questioned L.M. to determine whether the events actually happened. By explaining to L.M. the serious nature of her allegations and the importance of telling the truth, the record supports an inference that Mother attempted to ensure that L.M. understood the need to tell the truth. *See Lumsden*, 564 S.W.3d at 881 (one reliability factor includes "whether the child understands the need to tell the truth and has the ability to observe, recollect, and narrate"). Appellant does highlight that L.M. did not make the second report of Appellant's acts until after she got caught viewing pornography on a school computer. But that argument presents only a chicken-and-egg dilemma. Did the then ten-year-old child make up a story of oral sex because she watched pornography, or was she watching pornography because Appellant introduced her to oral sex when she was six? We cannot say the trial judge erred in concluding the latter was reliably the case.

Appellant also contends that the timing of L.M.'s outcry called into doubt its reliability. In particular, Appellant contends that the alleged abuse occurred in 2016, two years prior to L.M.'s outcry, when she was only six years old, making it doubtful that she would be able recall the events

in question. Appellant's casting of the record is not entirely accurate. At the hearing, Mother initially testified that L.M. told her that the abuse had occurred "a while ago" but that L.M. was unable to be more specific. Upon further questioning by the prosecutor, however, Mother expressed her belief that the abuse had *started* two years prior to the outcry. Mother also noted that L.M. reported that the abuse had occurred a "few times" which suggests that some of the abuse could have occurred more recently.

Moreover, there is nothing in the record to suggest that L.M. had any difficulty recalling the events in question when she made her outcry to Mother. Instead, her outcry contained specific details, was consistent with the statements she had previously made to her brother, and ultimately was consistent with the other trial testimony. And although Appellant recognizes that the State presented evidence that corroborated L.M.'s outcry at trial, he finds it significant that the State did not present any corroborating evidence at the Article 38.072 hearing. The lack of corroborating evidence, however, does not preclude a finding that L.M.'s outcry statement was reliable in nature. *See, e.g., Buentello*, 512 S.W.3d at 518-19 (noting that corroborating evidence is not necessary in order to find a statement reliable).

Appellant also challenges Mother's credibility by pointing out that she did not immediately report the outcry to law enforcement and that she maintained a relationship with Appellant even after the outcry was made. This challenge, however, is not relevant to our analysis. "[T]he focus of an Article 38.072 hearing is exceptionally narrow." *Sanchez*, 354 S.W.3d at 487. While the focus does include the reliability of the complainant's out-of-court statement, it does not include attacks on the credibility or background of the outcry witness. *Id.* at 487-489 (the credibility of an outcry witness is for the jury to consider, but it is not relevant in the Article 38.072 hearing).

Considering all the non-exclusive factors from *Lumsden*, we conclude that the trial court

did not abuse its discretion in determining that Mother's outcry testimony was sufficiently reliable to be admissible under Article 38.072.

### 3. Harm Analysis

Moreover, even if we were to find that the trial court erred in admitting the outcry testimony at trial, we would not conclude that its admission required reversal of his conviction. The erroneous admission of evidence, including outcry testimony, is considered a non-constitutional error. *See West v. State*, 121 S.W.3d 95, 104 (Tex.App--Fort Worth 2003, pet. ref'd). Under TEX.R.APP.P. 44.2(b) we can only reverse non-constitutional error that affected Appellant's substantial rights. *Id.* Non-constitutional error is harmless if, after reviewing the entire record, the court is reasonably assured the error did not influence the jury's verdict or had but a slight effect. *Id.* Moreover, if the same or similar evidence is admitted without objection at another point during the trial, the improper admission of the evidence will not constitute reversible error. *Id.* at 104-105.

As set forth above, the State presented the testimony of several witnesses who testified, without objection, that L.M. had made similar outcries to them. These witnesses included two forensic interviewers, L.M.'s brother, and the SANE examiner. L.M. herself testified at trial that she made the outcry statement to her mother. In addition, L.M. provided factually specific testimony describing the abuse, and the State presented two journal entries L.M. made that also described the abuse. We are therefore reasonably assured that any error in admitting Mother's outcry testimony did not influence the jury's verdict or had but a slight effect.

Appellant's Issue One is overruled.

### CONCLUSION

The trial court's judgment is affirmed.

JEFF ALLEY, Chief Justice

December 17, 2019

Before Alley, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)