**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-13-00158-CR**
**NO. 09-13-00159-CR**
**NO. 09-13-00160-CR**
**NO. 09-13-00161-CR**
**NO. 09-13-00162-CR**
**NO. 09-13-00163-CR**

_____

**CARLOS OMAR CORDERO, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 12-09-09813 CR (Counts 1, 2, 3, 7, 8, 9)**

**OPINION**

Appellant Carlos Omar Cordero was convicted by a jury of four counts of indecency with a child and two counts of aggravated sexual assault of a child. In seven issues, Cordero appeals his convictions and contends the trial court erred by: (1) permitting an outcry witness to testify when the alleged victim was not a child at the time she made her outcry, (2) allowing an outcry witness to testify about

1

extraneous offenses occurring outside of Montgomery County, and (3) allowing the State to question Cordero about the veracity of the alleged victim's testimony. We affirm the trial court's judgment.

## I. Factual and Procedural Background

The victim in this case, M.P.[1], was twenty-eight years old when, in 2011, she first reported acts of sexual abuse she endured as a child to Detective Mark Denham of the Shenandoah Police Department. M.P. described to Detective Denham a number of incidents where Cordero allegedly committed acts of indecency by contact and sexual assault against her when she was a child. The State indicted Cordero on five counts of indecency with a child by contact and four counts of aggravated sexual assault of a child by contact. The State alleged that Cordero committed these acts between August 1, 1991 and January 1, 1995, when M.P. was between the ages of nine and twelve.

## II. Outcry Testimony

In his first six issues, Cordero contends the trial court erred by admitting outcry testimony from the police officer when such testimony was inadmissible hearsay not subject to the outcry exception in article 38.072 of the Texas Code of Criminal Procedure. In his first issue, Cordero contends that the trial court erred in admitting the testimony of Denham as an outcry witness because Denham did not

[1] We will refer to the complainant by her initials to protect the complainant's privacy.

2

receive the statement from a child as required by the statute, but from M.P. after she had reached the age of majority. In his second, third, fourth, fifth, and sixth issues, Cordero argues the trial court erred in admitting Denham's outcry testimony that described five further extraneous acts that allegedly occurred outside of Montgomery County.

As the groundwork for this discussion, we begin with the well-known definition of hearsay—an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). "Hearsay is not admissible except as provided by statute or [the Rules of Evidence] or by other rules prescribed pursuant to statutory authority." Tex. R. Evid. 802. The State does not dispute that the statement M.P. made to Denham was hearsay. Rather, the State contends that it was admissible hearsay under article 38.072 of the Texas Code of Criminal Procedure.

## A. Standard of Review

We review a trial court's designation of an outcry witness under an abuse of discretion standard. *See Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). A trial court abuses its discretion when its ruling is outside the zone of reasonable disagreement. *Zarco v. State*, 210 S.W.3d 816, 830 (Tex. App.—Houston [14th Dist.] 2006, no pet.). We will not disturb the trial court's ruling

3

absent a clear abuse of discretion. *Id*. We will uphold a trial court's designation of an outcry witness if it is supported by the evidence. *Garcia*, 792 S.W.2d at 92.

**B. Article 38.072 - An Exception to the Hearsay Rule**

Article 38.072 creates a statutory exception to the hearsay rule for child victims of certain offenses. *Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990). Because Cordero was charged with committing offenses between August 1, 1991 and January 1, 1995, the 1985 version of article 38.072 is applicable in this case. The 1985 version of the statute provides a hearsay exception for statements made by a child victim to the first person, 18 years of age or older, other than the defendant, in which the child describes certain offenses, including indecency with a child and aggravated sexual assault, committed against her when she was twelve years of age or younger. Act of May 27, 1985, 69th Leg., R.S., ch. 590, § 1, 1985 Tex. Gen. Laws 2222, 2223 (amended 1995, 2009, 2011) (current version at Tex. Code Crim. Proc. Ann. art. 38.072, §§ 1, 2 (West Supp. 2014).[2]

Once a hearsay objection has been raised to such testimony, the burden shifts to the State, as the proponent of the hearsay evidence, to establish compliance with the provisions of article 38.072. *Long v. State*, 800 S.W.2d at 547-

---

[2] In 2009, the Texas Legislature amended article 38.072 to except from the hearsay rule the outcry statements pertaining to certain offenses "committed against a child younger than fourteen years of age or a person with a disability[.]" *See* Act of May 27, 2009, 81st Leg., R.S., ch. 710, § 1, 2009 Tex. Gen. Laws 1780, 1780 (current version at Tex. Code Crim. Proc. Ann. art. 38.072, § 1).

48; *see also Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994). The 1985 version of article 38.072 provides that this hearsay exception only applies to "statements that describe the alleged offense that: (1) were made by the child against whom the offense was allegedly committed; and (2) were made to the first person, [eighteen] years of age or older, other than the defendant, to whom the child made a statement about the offense." Act of May 27, 1985, 69th Leg., R.S., ch. 590, § 1, 1985 Tex. Gen. Laws 2222, 2223 (amended 1995, 2009, 2011). The 1985 version of article 38.072 further provides that the statement will not be inadmissible because of hearsay if: (1) the party intending to offer the statement gives proper notice as provided in the statute; (2) the trial court holds a hearing outside the presence of the jury and finds the statement is reliable based on the time, content, and circumstances of the statement; and (3) the child testifies or is available to testify at the proceeding. *See id.* These provisions of the statute are mandatory and must be satisfied for the article 38.072 exception to be applied. *Long*, 800 S.W.2d at 547.

## C. Preservation of Error

Cordero contends the provisions of article 38.072 were not satisfied because (1) M.P., the complainant, was not a child when she made her statements and (2) the events described in some of the statements were not of the alleged offenses. The State argues that Cordero failed to preserve these issues for appeal.

5

Specifically, the State contends that for Cordero to have preserved these issues, he would have had to present the specific arguments he now makes on appeal to the trial court—i.e., he had to argue to the trial court that article 38.072 is inapplicable because M.P. was no longer a child when she made her outcry statement and that the statements regarding extraneous offenses committed outside of Montgomery County were inadmissible hearsay.

To preserve error for appellate review, a party must make an objection with sufficient specificity to make the trial court aware of the complaint and its basis and obtain a ruling on the objection. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Gutierrez v. State*, 36 S.W.3d 509, 511 (Tex. Crim. App. 2001); *see also* Tex. R. App. P. 33.1; Tex. R. Evid. 103(a)(1). A party meets the specificity requirement if the party's complaint to the trial judge was clear enough for the trial judge to take corrective action when the complaint was made. *Lovill v. State*, 319 S.W.3d 687, 691 (Tex. Crim. App. 2009). There are two exceptions to the general rule that a party must object each time evidence is offered: (1) if the party obtains a running objection; and (2) if the party requests a hearing outside the presence of the jury. *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003); *Ethington v. State*, 819 S.W.2d 854, 858-59 (Tex. Crim. App. 1991); *see also* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1).

There appears to be a split of opinion in the court of appeals as to whether a general "hearsay" objection is sufficient to preserve an issue that the requirements of article 38.072 have been met or whether a more specific objection is required. *See Halbrook v. State*, 322 S.W.3d 716, 721-22 (Tex. App.—Texarkana 2010, no pet.) (noting the split in opinion in the courts of appeals on this issue); *Zarco*, 210 S.W.3d at 828-29 (discussing the difference of opinion regarding this issue in the courts of appeals). The courts in both *Halbrook* and *Zarco* determined that the Court of Criminal Appeals resolved this issue in *Long* when it held that the defendant preserved error by a hearsay objection. *See Halbrook*, 322 S.W.3d at 722; *Zarco*, 210 S.W.3d at 828-29; *Long*, 800 S.W.2d at 548. We agree that *Long* controls our analysis of Cordero's preservation of these issues.

In *Long*, the defendant was accused of aggravated sexual assault of a child. 800 S.W.2d at 546. The complainant had made an outcry to her mother, and the defendant objected at trial to the mother's testimony as hearsay. *Id*. On appeal, the defendant reiterated his complaint that the mother's testimony was hearsay, but also argued that the trial court should not have allowed her testimony because the trial court failed to conduct a reliability hearing. *Id*. The court of appeals held that the defendant's general hearsay objection was insufficient to preserve error on the issue of whether the trial court should have conducted a reliability hearing. *Id*. However, the Court of Criminal Appeals disagreed, holding that the defendant's

objection adequately notified the trial court of his complaint even though he did not specifically object under article 38.072 or on the grounds that the trial court failed to hold a hearing to determine the outcry witness's reliability. *Id*. at 548. The Court explained, in order for the State to use article 38.072 to overcome the hearsay objection, the State must comply with the provisions in the statute. *Id*. at 547. In reversing the lower court's decision, the Court of Criminal Appeals concluded:

> The Court of Appeals held only that the hearsay objection was insufficient because it was a "general" objection and did not comport with his complaint on appeal. Their opinion does not discuss whether the State met the predicate of Art. 38.072 by notifying appellant of its intention to use the testimony of the complainant's mother, and providing him with a summary of her statement within the time period required by the statute. As proponent of the evidence, the State had the burden to satisfy each element of this predicate for admission of the mother's testimony pursuant to Art. 38.072, . . . or to provide some other exception to the hearsay rule. Appellant did not waive his right to appellate review by failing to specifically cite to the statute or to request a hearing where the statute pertains only to hearsay statements of child abuse victims.

*Id*. at 547-48. Therefore, a general "hearsay" objection by the defendant can be sufficient to inform the trial court of the defendant's complaint regarding testimony disclosing an outcry statement. *See Long*, 800 S.W.2d at 548. Indeed, the Court of Criminal Appeals has indicated that when a party challenges the evidence as hearsay, it "should be regarded by courts at all levels as a sufficiently specific

8

objection, except under the most unusual circumstances." *Lankston v. State*, 827 S.W.2d 907, 910 (Tex. Crim. App. 1992).

In our consideration of whether Cordero adequately preserved these issues for review, we must first review the appellate record to determine what objections Cordero actually presented to the trial court. According to the record, the State filed its "Notice of Intent to Offer Hearsay Statement of Child Abuse Victim" informing Cordero that M.P.'s husband, Officer Thompson, and Detective Mark Denham with the Shenandoah Police Department would testify as outcry witnesses pursuant to article 38.072 of the Texas Code of Criminal Procedure. In response, Cordero filed a motion to suppress all hearsay statements detailed in the State's notice. In his motion, Cordero argued that the statements were inadmissible under article 38.072 because (1) the hearsay statements were not made to the first person, eighteen years of age or older; (2) the hearsay statements were not reliable based on the time, content, and circumstances of the statements; and (3) the hearsay statement to be introduced through M.P.'s husband was inadequate. Cordero requested an evidentiary hearing on the matter.

The case proceeded to trial, but before opening statements, Cordero reminded the trial court of the necessity to hold a hearing regarding the outcry statements before any such statements were presented to the jury. The trial court conducted a hearing outside the presence of the jury regarding the admissibility of

the outcry statements. At the hearing, Detective Denham testified about the circumstances under which M.P. came to make a statement to him about the assaults. M.P. likewise testified and confirmed that Denham was the first person to whom she gave specific details regarding the assaults that occurred when she was a child. During the hearing, Cordero argued only: (1) that Denham was not the first person over age eighteen that M.P. told about the abuse, and (2) that M.P.'s outcry statement lacked spontaneity. At the conclusion of the hearing, the trial court determined that M.P.'s outcry statement to Denham appeared "reliable based on the time, content, and circumstances of the statement, and that he is the outcry witness in this case." The parties then presented their opening statements. Thereafter, the State called Denham to testify. However, before Denham took the stand, Cordero objected to Denham's testimony "as being hearsay as to being in violation of the Fifth, Sixth Amendments, and Fourteenth Amendment[] of the US Constitution [.]" The trial court overruled Cordero's objection, but on Cordero's request, granted a running objection to Denham's testimony.

After reviewing Cordero's objections at trial, we conclude that both the trial court and the prosecutor understood Cordero's objection to Denham's testimony was that it did not fall within the statutory hearsay exception for "outcry" witnesses. Once Cordero raised his hearsay objection to Denham's testimony, as the proponent of the outcry statement in this case, the State bore the burden to

10

show compliance with each element of article 38.072 to show that the hearsay rule of exclusion did not apply and that Denham's testimony was admissible. *See Long*, 800 S.W.2d at 547; *see also Cofield*, 891 S.W.2d at 954. This would include a showing that the complainant and her statements were the type the statute was designed to address. We conclude Cordero adequately preserved this issue for review.

## D. Applicability of Article 38.072

Cordero argues that article 38.072 applies only to outcry statements made by a person who is under the age of eighteen when the outcry is made, and that M.P.'s outcry to Denham when she was twenty-eight years old was inadmissible hearsay. We note that while this Court has never specifically addressed the issue raised by Cordero, other courts of appeals have. In *Harvey v. State*, the complainant was twelve years old at the time of the offense, eighteen years old at the time of her outcry, and nineteen years old at the time of trial. 123 S.W.3d 623, 627 (Tex. App.—Texarkana 2003, pet. ref'd). The court reviewed various statutory definitions of the words "child," "minor," and "adult," and found two distinguishable groups of definitions—i.e., those definitions that draw the line at eighteen years of age and designed to protect the child's person versus those that add marriage or removal of disabilities and designed to protect a person's legal or business affairs. *Id*. at 628-29. The court reasoned that article 38.072 belonged in

the group of statutes that simply drew the line at eighteen years of age because it was "designed to protect the child's person." *Id.* at 629. The court held that for article 38.072 to apply,

> not only must the offense have been committed against a child twelve years of age or younger, but also the victim, while still a child—that is, not having reached his or her eighteenth birthday—must have confided the details of the ordeal to a person eighteen years of age or older. Failure of the second criterion renders [a]rticle 38.072 inapplicable. As a result, the trial court should not have permitted [the outcry witness] to testify with the content of [the complainant's] outcry statement.

*Id.* The court then considered the question of harm and determined that the appellant's substantial rights were not affected under rule 44.2(b) of the Texas Rules of Appellate Procedure because the outcry testimony was "merely cumulative of other evidence properly admitted[.]" *Id.* at 631. Other courts of appeals have adopted the analysis in *Harvey. See, e.g., Salas v. State*, No. 04-12-00015-CR, 2013 WL 1148925, at *5 n.2 (Tex. App.—San Antonio Mar. 20, 2013, pet. ref'd) (mem. op., not designated for publication); *Alejo v. State*, No. 03-10-00436-CR, 2011 WL 3659309, at *4 (Tex. App.—Austin Aug. 19, 2011, no pet.) (mem. op., not designated for publication); *Lopez v. State*, 315 S.W.3d 90, 97 n.6 (Tex. App.—Houston [1st Dist.] 2010), *rev'd on other grounds*, 343 S.W.3d 137 (Tex. Crim. App. 2011).

Because M.P. was twenty-eight years old when she made her outcry statement to Denham, we conclude the trial court abused its discretion in permitting Denham to testify to the content of M.P.'s outcry statement.

**E. Determination of Harm**

The State asserts that even if the trial court erred in admitting Denham's testimony, any error was harmless. The erroneous admission of hearsay is non-constitutional error that is subject to a harm analysis under rule 44.2(b) of the Texas Rules of Appellate Procedure. *See* Tex. R. App. P. 44.2(b); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). We must disregard non-constitutional error unless it affects the substantial rights of the defendant. Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Duncan*, 95 S.W.3d at 672. In assessing the likelihood that the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005). A conviction should not be overturned for such error if, after examining the entire record, we have fair assurance that the error did not influence

13

the jury or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Furthermore, improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Duncan*, 95 S.W.3d at 672. Neither the State nor the appellant has the burden to show harm when an error has occurred, and there ordinarily is no way to prove "actual" harm. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001). Rather, it is our duty as an appellate court, after appropriate review, to assess harm. *Id*.; *see Johnson v. State*, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001). We must reverse a conviction for nonconstitutional error if we have "grave doubt" about whether the result of the trial was free from the substantial influence of the error. *Barshaw v. State*, 342 S.W.3d 91, 94 (Tex. Crim. App. 2011). "'Grave doubt' means that 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'" *Id*. (quoting *Burnett v. State*, 88 S.W.3d 633, 637-38 (Tex. Crim. App. 2002)). In a case where the judge has grave doubt as to the harmlessness of the error, the appellant must win. *Id.* (quoting *Burnett*, 88 S.W.3d at 638).

After conducting our own review of the entire record, including all testimony and evidence admitted for the jury's consideration, we cannot conclude that Denham's testimony regarding M.P.'s statement affected Cordero's substantial

14

rights. The State called Detective Denham as its first witness to testify as to M.P.'s statement. According to Denham, M.P. made a complaint to the Shenandoah Police Department that she had been sexually assaulted as a child. Denham testified that based on his investigation, he believes that M.P. was under age fourteen when each assault occurred. He further testified, based on M.P.'s statement, that he believes that Cordero sexually abused M.P. at a number of different locations, including a business called Bud's, M.P.'s childhood home, the city pool, and other places located in Harris County, Galveston County, and Bexar County. Denham testified as to the details of M.P.'s statement regarding each incident of abuse.

Because Denham was the first witness called by the State, Denham's testimony tended to add credence or weight to M.P.'s expected testimony. However, 'outcry' testimony is necessarily cumulative of a complainant's testimony." *Shelby v. State,* 819 S.W.2d 544, 551 (Tex. Crim. App. 1991); *see* Tex. Code Crim. Proc. Ann. art. 38.072. M.P. likewise testified at length regarding the details of the sexual abuse she suffered at the hands of Cordero. M.P.'s testimony was as detailed as Denham's testimony of the alleged offenses, and in some instances, M.P.'s testimony provided more details.

In issues two through six, Cordero complains of the admissibility of Denham's testimony regarding other extraneous acts, which occurred outside of Montgomery County. Having held the admission of Denham's testimony was

15

error, we must also include this testimony in our harm analysis. Under article 38.37 of the Texas Code of Criminal Procedure, the admission did not violate rule 404(b) of the Texas Rules of Evidence. Tex. Code Crim. Proc. Ann. art. 38.37 (West Supp. 2014).[3] Article 38.37 provides:

> [n]otwithstanding [Rule] 404..., evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child.

*Id*. § 1(b); *see Cucancic v. State*, 997 S.W.2d 396, 398 (Tex. App.—Beaumont 1999, pet. ref'd). In the instant case, M.P.'s testimony, which was admitted without objection, involved evidence of other crimes, wrongs, or acts committed by Cordero against her and concerned relevant matters under article 38.37.

This was a "he said, she said" case and because of the passage of time, there was little corroborative evidence. *See Hammer v. State,* 296 S.W.3d 555, 561-62 (Tex. Crim. App. 2009) ("Sexual assault cases are frequently 'he said, she said' trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence."). M.P.'s husband testified to M.P.'s recent recurring

---

[3] While the Legislature has amended article 38.37 a number of times since the indictment alleges Cordero committed his offenses, those amendments do not affect the outcome of Cordero's appeal. Therefore, we cite to the current version of the statute.

nightmares, seemingly triggered by their moving back into her childhood bedroom at her parents' home, and thus, providing an explanation for bringing her complaints after such a substantial passage of time. M.P.'s mother testified that M.P. was a "very outgoing, very happy" child. But, according to M.P.'s mother, she noticed a drastic change in M.P.'s behavior, study habits, and grades about the same time Cordero started spending time with M.P. M.P.'s mother tried year after year to get M.P. to open up about what had happened to her, but M.P. refused to talk about it and would "burst in tears."

Denham was allowed to read a statement to the jury that was given to him during his investigation by Connie, one of M.P.'s childhood friends. In her statement, Connie related events that occurred when M.P. attempted to make an outcry to her when they were teenagers. Specifically, Connie stated that "M.P. told me her sister's boyfriend had been physically inappropriate with her." Connie stated that because M.P. was too scared to tell her parents what was happening, Connie called M.P.'s mother and told her what M.P. had said to her in an effort to protect M.P. from Cordero. Connie recalled that M.P. later told her that Cordero had been confronted with the allegations and had denied everything and that M.P.'s family thought M.P. had made up the accusations. Cordero did not object to such testimony and offered the written statement into evidence, tending to give further credence to M.P.'s testimony.

M.P.'s sister, who was dating Cordero during the time period when these incidents occurred, recalled the events when these acts took place, but she never saw anything inappropriate happen between Cordero and M.P. That said, M.P.'s sister does recall that Cordero hugged M.P. and felt sure he also kissed her on the cheek. After being made aware that something inappropriate had happened between Cordero and M.P., M.P.'s sister confronted Cordero and he stated it was just "a big misunderstanding." After talking with M.P., M.P.'s sister was left with the impression that M.P. had walked in on Cordero showering and he did not cover himself up quickly enough and that had upset M.P. M.P.'s sister testified that after what had happened she decided to end the relationship with Cordero. Notably, about a year after breaking off her engagement to Cordero, M.P.'s sister started dating him again and eventually the two lived together.

According to Cordero, sometime in late 2001 or early 2002, M.P. dropped her child off at the house her sister shared with Cordero in San Antonio in order for her sister to babysit M.P.'s child. Cordero assumed that M.P. knew he was at the house when M.P. left her child because he lived with M.P.'s sister. However, M.P.'s sister disputes that she ever babysat M.P.'s child when she lived with Cordero in San Antonio. Moreover, according to M.P.'s husband, their oldest child was born mid-year 2002, which would mean M.P. had no children in late 2001 or early 2002 to leave with her sister or Cordero.

Cordero and his brother both offered testimony that disputed M.P.'s allegations and was intended to show that Cordero could not have been alone with M.P. during the occasions when some of these acts were alleged to have occurred. Cordero also presented witnesses who testified that he has a good reputation in the El Paso community, that he has a good reputation for dealing with children, and that he is a truthful person.

Cordero's counsel cross-examined M.P. as to why she continued to voluntarily accompany her sister and Cordero to various places even after the sexual abuse began. M.P.'s testimony in response to this cross-examination suggests that she did not volunteer to spend time with Cordero. She explained that her sister would babysit her when her parents would go out of town. She could not recall specifically the circumstances leading up to some of the incidents, but she believes that if she had been given a choice to go somewhere with her sister and she had known ahead of time Cordero would be there, she would have chosen not to go.

The State offered the testimony of Dr. Lawrence Thompson Jr., the director of therapy and psychological services at the Harris County Children's Assessment Center. Dr. Thompson opined that it is normal for a child victim of sexual abuse to act normal in front of other people or the perpetrator of the abuse. In his opinion, "[k]ids who have been abused many times want to do anything but talk about the

abuse, do anything but draw attention to themselves related to the abuse." He also explained that it would not be unusual to see a victim act friendly in front of her abuser. He related to the jury that delayed disclosures of sexual abuse are common—years, decades, or even a lifetime can go by before a victim may be able to talk to someone else about sexual abuse suffered as a child. Finally, Dr. Thompson testified that it is common in the case of delayed disclosures for a victim not to know specific dates of when the abuse occurred.

The record reflects that Cordero received proper notice of the State's intention to use Denham to relate M.P.'s outcry statement, and nothing in the record suggests that Cordero was surprised with the complained-of testimony. During closing arguments, the State did not emphasize the erroneously admitted testimony; rather, the State focused its argument on M.P.'s live testimony.

After both parties gave their closing arguments, the case was given to the jury. At some point during the deliberations, the jury sent the following note to the trial judge: "We are deadlocked 7 to 5. No one has changed their mind since entering this room. It does not appear that this will ever change. What do we do?" The trial judge responded in writing, "Please keep deliberating." While the jury was still deliberating, the trial judge brought the jury into the courtroom and the following exchange took place:

> THE COURT: Has the jury reached a verdict on any of the nine counts?

20

PRESIDING JUROR: No.

THE COURT: Okay. Then at this time I am going to declare a mistrial and this case will possibly be tried again. You have been deliberating a long time. You-all have worked really hard on it. And—

PRESIDING JUROR: We have made progress. We are getting there.

THE COURT: And if you would like to remain here tonight, then we can stay here a little longer. I mean, it is up to you.

PRESIDING JUROR: Do you-all want to go another hour and try?

JUROR: What about coming back tomorrow?

PRESIDING JUROR: I don't think that is an option.

THE COURT: No.

PRESIDING JUROR: I think we should try a little bit longer.

The jury continued its deliberations. After thirty additional minutes, the jury reached a unanimous verdict of guilty on six of the charges. At Cordero's request, the trial court confirmed the unanimous verdict by polling the jury.

After examining the entire record, and after considering the nature of the evidence supporting the verdict, along with the character of the error and how it might have been considered in connection with other evidence in the case, we cannot conclude that Cordero's substantial rights were affected by the trial court's error. Denham's testimony was merely cumulative of other evidence admitted

21

without objection. *See Duncan*, 95 S.W.3d at 672. The jury was properly instructed that it was the exclusive judge of witness credibility. The jury heard conflicting accounts of each alleged incident and, when viewed in the context of the record as a whole, the evidence provided a basis for a jury to reach its verdict even without considering Denham's testimony. After this review, we harbor no "grave doubt" about whether the result of the trial was free from the substantial influence of the error. Because Cordero's substantial rights were not affected, we conclude the erroneous admission of the hearsay evidence was harmless. Thus, we overrule Cordero's first, second, third, fourth, fifth, and sixth issues. *See* Tex. R. App. P. 44.2(b); *Duncan*, 95 S.W.3d at 672.

### III. Improper Cross-Examination

In his seventh issue, Cordero complains that the trial court improperly allowed the State to question Cordero on the credibility of M.P.'s testimony. During cross-examination, the prosecutor asked Cordero, "You also want the jury to believe that [M.P.] is a liar?" Cordero objected that this was improper cross-examination because the prosecutor's question asked Cordero to "pass on another witness' credibility[.]" The trial court overruled the objection and required Cordero to respond. On appeal, the State responds that while the prosecutor's question may have been argumentative, it does not rise to the level of reversible error.

It is well-settled that an attorney may not impeach one witness's testimony with the testimony of other witnesses. *See Ex parte McFarland*, 163 S.W.3d 743, 755 n.37 (Tex. Crim. App. 2005). Thus, the trial court erred by overruling Cordero's objection to the prosecutor's veracity questions. However, after reviewing the record, we conclude that the error does not affect Cordero's substantial rights and does not justify reversal. *See McKinney v. State*, 491 S.W.2d 404, 408 (Tex. Crim. App. 1973) (finding no reversible error when the prosecutor, over objection, was permitted to ask appellant on cross examination if two of the State's witnesses were lying after appellant gave a version of the facts different than the State's witnesses). Cordero's testimony only highlighted the fact that his testimony conflicted with M.P.'s. Under these circumstances, we find that Cordero suffered no harm. We overrule Cordero's seventh issue.

Having overruled all of Cordero's issues on appeal, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on May 14, 2014
Opinion Delivered September 24, 2014
Publish

Before McKeithen, C.J., Kreger, and Horton, JJ.

23