**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00113-CR**
_____

**IKEAL WADE GARDINER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 1A District Court**
**Jasper County, Texas**
**Trial Cause No. 14049JD**

**MEMORANDUM OPINION**

In January 2020, a grand jury indicted appellant, Ikeal Wade Gardiner, and alleged that in a period of 30 or more days between August 1, 2017, and May 1, 2019, he committed two or more acts of sexual abuse against a child who was identified in the indictment by her initials. Tex. Penal Code Ann. § 21.02(b) (Continuous Sexual Abuse of Young Child). We will call the child who is identified as the alleged victim of Gardiner's offenses *Michelle*, and we note that she is

Gardiner's step-granddaughter.[1] After a jury trial which returned a guilty verdict, the jury sentenced Gardiner to life in prison. The judgment the trial court signed is consistent with the jury's verdict.

Gardiner raises five issues for our review. In his first issue, Gardiner complains that the trial court improperly admitted outcry statements without first conducting a hearing outside the presence of the jury to determine whether the statements were reliable based on the time, content, and circumstances of the statement. In his second issue, he complains the trial court erred in admitting the written statement of an outcry witness. In his third issue, Gardiner complains that the trial court erred in admitting the testimony of Michelle's licensed counselor concerning the statements about the sexual abuse Michelle made to the counselor. In his fourth issue, Gardiner complains that the trial court erred in admitting a recorded telephone call and in-person interview he made with the investigating police officer. Finally, Gardiner complains that the admission of the evidence he complains of was harmful because it affected his trial strategy.

For the reasons discussed below, we affirm the trial court's judgment.

---

[1]We have used pseudonyms to protect the privacy of several individuals who are mentioned in the opinion. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect to the victim's dignity and privacy throughout the criminal justice process"). We identify that we have used a pseudonym in lieu of the actual name with italics when the person is first mentioned in the opinion.

## Background

On September 30, 2019, Michelle made an outcry statement to her school counselor, Lacy Girola, about alleged sexual abuse by her step-grandfather, Ikeal Wade Gardiner. At the conclusion of her conversation with Michelle, Girola drafted a written statement in accordance with school protocol. Girola notified the principal and the superintendent of the school district, who contacted the sheriff's department.

The sheriff's office referred the case to Jason McClelland, then a lieutenant investigator with the Jasper County Sheriff's Office. McClelland first met with Michelle's mother, *Barbara*, who was instructed by McClelland to take Michelle to the hospital for a forensic examination to be conducted by a Sexual Assault Nurse Examiner ("SANE"). He also scheduled Michelle for a forensic interview with the Garth House.

Barbara took Michelle to the hospital that same day where Syrena Krummel, a forensic nurse, examined Michelle. Krummel first took a verbal medical history from Michelle and then performed a physical examination of Michelle's entire body, including her genital areas. She did not find an injury on the body or genital area but said that she wasn't surprised by the absence of injury, as "[m]ost of the time there is not any injury." She documented her findings in a sexual assault examination and forensic report which was admitted into evidence without objection.

3

McClelland contacted Gardiner on October 2 after learning that Gardiner was very depressed and that he had learned of the outcry. He first reached out to Gardiner on the telephone. During the call, Gardiner agreed to visit McClelland in person at the sheriff's office. Both the telephone call and the in-person interview were recorded.

At trial, Michelle described how the sexual abuse started when she was around eight or nine years old. It began with kissing and touching, but thereafter escalated. Michelle testified that Gardiner put his fingers in her vagina several times in several different locations. Michelle said that Gardiner tried to put his penis "on" or "inside" her vagina, but he was unsuccessful because she fended him off. According to her testimony, Gardiner also put his penis inside Michelle's mouth a couple of times in her grandparents' guest bedroom. Michelle testified that Gardiner put his mouth on her vagina "more than once."

Gardiner took the stand in his defense. He denied many of the allegations made against him by the State but did admit to touching Michelle's vagina with his hand on more than one occasion. He also admitted to putting his mouth on Michelle's vagina. He testified that it all started with Michelle climbing on his lap and moving side to side on his leg. On another occasion, Michelle climbed up on his recliner and started moving side to side on his leg. That, according to Gardiner, is when the hand

4

fondling began. Gardiner also claimed that Michelle pulled her shorts halfway down. Gardiner believed that both he and Michelle shared fault for what happened.

At the conclusion of trial, the jury found Gardiner guilty of the offense of continuous sexual abuse of a child. After the presentation of evidence during the punishment stage, the jury decided that Gardiner should serve a life sentence in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

Analysis

*Outcry Statements*

In his first issue, Gardiner complains that the trial court erred in admitting the testimony of Lacy Girola, the junior high school counselor, and Magan Bonner, a forensic interviewer at Garth House, concerning what Michelle told them. More specifically, he contends that the trial court failed to conduct a hearing outside the presence of the jury to determine whether the statements Michelle made to Girola and Bonner were reliable based on their time, content, and circumstances. In his second issue, he complains that the trial court erred in admitting Girola's written statement because it constituted double hearsay that did not fall within any of the exceptions to the general rule that hearsay is inadmissible. Because these two issues are substantially related, we address them together.

5

Girola was the first witness to testify. She testified that on September 30, 2019, Michelle came to her office to speak with her. Before Girola testified regarding what Michelle told her, defense counsel objected to Girola's testimony as hearsay. The State responded that Girola had been designated as an outcry witness. The trial court overruled the objection, and Girola was allowed to testify that Michelle said that her grandfather was sexually harassing her by physically touching her. Before testifying about the details of the conversation, Girola explained that she had prepared a written statement at the conclusion of the conversation pursuant to school protocol and because she believed it was the right thing to do.

When Girola's written statement was offered into evidence, Gardiner objected on the grounds of hearsay, lack of proper predicate, and the best evidence rule. The trial court overruled the objection and Girola's statement was read into evidence.

Girola's written statement included details of Michelle's conversation with Girola. According to the statement, Michelle told Girola that her grandfather touched her in inappropriate places, such as the breast area and genital area. Michelle told Girola that her grandfather tried to have sexual intercourse with her, but Michelle would not let him get that far. The sexual abuse occurred at her grandparents' house, mostly when her grandmother was out. But if her grandmother was at home, her grandfather would make her go to the shed with him.

6

Bonner testified about her interview of Michelle at the Garth House. According to Bonner, Michelle "said that she was sexually harassed and she explained that that was being touched where she didn't want to be touched and she talked about certain touches and she also talked about the grandpa putting his -- like, licking her genital area." Bonner testified Michelle told her this happened "a lot of times."

Hearsay is an out of court statement offered at trial for the truth of the matter asserted in the statement. Tex. R. Evid. 801(d). The State has not indicated any reason for proffering the statements other than for the truth of the matters asserted therein. A witness's prior statement is hearsay if it is consistent with her trial testimony and is offered for the purpose of "bolstering" the witness's credibility. *Id.* 801(e)(1)(B); *Hammons v. State,* 239 S.W.3d 798, 805 n.17 (Tex. Crim. App. 2007). Therefore, Michelle's out of court statements to Girola and Bonner were hearsay, and Girola's written statement detailing what Michelle told her was hearsay containing hearsay. Hearsay is generally inadmissible unless an exception applies. *Hammons,* 239 S.W.3d at 802.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). "[A]n objection must be

7

specific in order to inform the trial judge of the basis of the objection and to afford counsel the opportunity to remove the objection or supply other testimony." *Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990).

The State correctly points out that there was no objection to Bonner's testimony. Therefore, we hold that Gardiner failed to preserve any complaint regarding Bonner's testimony. However, as explained below, we hold that Gardiner properly preserved error as to his complaints about Girola's testimony and written statement.

Gardiner's "hearsay" objections to Girola's testimony and written statement were specific enough to inform the court of the basis of his objection, placing the burden on the State to establish the applicability of an exception which would allow the admission of hearsay. *Id.*; *see also Cordero v. State*, 444 S.W.3d 812, 818 (Tex. App.—Beaumont 2014, pet. ref'd).

The State argues Girola's written statement was admissible as a present sense impression under Texas Rule of Evidence 803(1). A present sense impression is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Tex. R. Evid. 803(1). It is questionable whether Girola's narrative statement qualified as a present sense impression. *See, e.g., Fischer v. State*, 207 S.W.3d 846, 859 (Tex. App.—Houston [14th Dist.] 2006), *aff'd*, 252 S.W.3d 375 (Tex. Crim. App. 2008); *Fields v. State*, 515 S.W.3d 47, 55

8

(Tex. App.—San Antonio 2016, no pet.). But even if it were, Girola's written statement recounts Michelle's hearsay statement to Girola, which is an additional level of hearsay for which an exception is required before Girola's written statement would be admissible. Tex. R. Evid. 805. Michelle's hearsay statement to Girola was not a present sense impression, since it was not made while or immediately after the events she was describing to Girola. Therefore, the present sense impression exception does not support the admission of Girola's written statement.

The State also argues Girola's written statement was admissible as a recorded recollection under Texas Rule of Evidence 803(5). A recorded recollection is "[a] record that: (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge, unless the circumstances of the record's preparation cast doubt on its trustworthiness." *Id.* 803(5). Gardiner's objection that "the proper predicate has not been laid" was well-founded, because there was no testimony that Girola was unable to recall her conversation with Michelle well enough to testify fully and accurately about it. Moreover, even if the statement qualified as a recorded recollection, the Rule provides, "If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party." *Id.* Lastly, Girola's written statement contains Michelle's statement, an additional level of

9

hearsay to which the recorded recollection exception does not apply. Therefore, Rule 803(5) does not support the trial court's admission of Girola's written statement.

The State also asserts that Girola's testimony and written statement were admissible under Texas Code of Criminal Procedure article 38.072 which provides a statutory exception to the hearsay rule. The statute allows a trial court to admit a child's statement describing sexual abuse to an outcry witness. Tex. Code Crim. Proc. Ann. art. 38.072. An outcry witness is the first person over the age of eighteen, other than the defendant, to whom the child spoke about the offense. *Id.* art. 38.072, § 2(a)(3). Among other requirements, the statute indicates the trial court must hold a hearing outside the presence of the jury to determine whether the hearsay statement is "reliable based on time, content, and circumstances of the statement." *Id.* art. 38.072, § 2(b)(2). "These provisions of the statute are mandatory and must be satisfied for the article 38.072 exception to be applied." *Cordero*, 444 S.W.3d at 816.

The State asserts Gardiner failed to preserve his complaints about the trial court's failure to hold an Article 38.072 hearing prior to admitting Girola's testimony and written statement. The record reflects, and Gardiner concedes, that although he objected both to Girola's testimony and written statement as hearsay, he did not request an Article 38.072 hearing.

Our analysis is controlled by *Long* and *Cordero*. In *Long*, the defendant's hearsay objection, without requesting an Article 38.072 hearing, was held to have

been sufficient to preserve the issue for appellate review. 800 S.W.2d at 548. And, as we held in *Cordero*, once the defendant objects on the basis of hearsay, the State, as the proponent of the outcry statement's admission, bears the burden to establish the applicability of Article 38.072. 444 S.W.3d at 816. Therefore, it was the State's burden, not Gardiner's, to request that the court conduct a hearing outside the presence of the jury so that the State could establish the reliability of the statements pursuant to Article 38.072. We hold Gardiner properly preserved his complaints regarding Girola's testimony and written statement, and that the trial court abused its discretion when it overruled Gardiner's hearsay objections without first conducting an article 38.072 hearing.

Next, we must consider whether Gardiner was harmed by the admission of Girola's testimony and written statement. *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd); *see also Cordero*, 444 S.W.3d at 819. Because such error is non-constitutional error, we apply the harm analysis set forth in rule 44.2(b). *Id.*; *see also* Tex. R. App. P. 44.2(b).

Non-constitutional error must be disregarded unless it affects substantial rights of the defendant. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *Duncan*, 95 S.W.3d at 672. An appellate court should not

11

overturn a criminal conviction for non-constitutional error "'if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or influenced the jury only slightly.'" *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011) (quoting *Schutz v. State*, 63 S.W.3d 442, 444 (Tex. Crim. App. 2001)). The improper admission of evidence is harmless when the same facts are proven by other properly admitted evidence. *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). Moreover, "[i]t is well settled that an error in admission of evidence is cured where the same evidence comes in elsewhere without objection; defense counsel must object every time allegedly inadmissible evidence is offered." *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984).

The record reveals four other prior consistent statements made by Michelle that were introduced into evidence without objection. Michelle's mother, Barbara, testified, without objection, that she received a call from a school counselor who told her that Michelle "had made an outcry to her that she was being sexually assaulted by her Pawpaw." As noted above, Bonner testified in detail, without objection, how Michelle told her that Gardiner sexually harassed her, touching her in places she did not want to be touched, including licking her genital area. The SANE nurse, Syrena Krummel, testified, without objection, that Michelle told her that her grandfather touched her genital area with his hands and put his mouth in her genital area on multiple occasions. Lastly, Julie Prudhome, the clinical director at Garth House who

12

conducted counseling and therapy sessions with Michelle, testified without objection that Michelle described being sexually abused by her step-grandfather and told her about being in a shed with him on multiple occasions when he would do sexual things to her, including oral sex.

Michelle testified, without objection, that she told her school counselor about her step-grandfather "sexually abusing [] or harassing" her. She also testified about being examined by a nurse, having an interview at the Garth House, and seeing a counselor named Julie.

Michelle told the jury that the events with her step-grandfather started with "innocent hugs, kisses, stuff like that" but later "escalated into more touching, and, like, more kissing[.]" Michelle testified that Gardiner kissed her on the mouth, put his hand on her breast and genital areas, put his fingers inside her vagina, put his mouth on her breast, and tried to put his penis on or inside her vagina but Michelle "refused not [sic] to let that happen[.]" Michelle also testified that Gardiner put his penis in her mouth and put his mouth on her vagina.

Michelle described to the jury the different locations where the abuse occurred. She described it happening on a couch at her grandmother's house when "Nana was in the kitchen and she wasn't paying attention or if she wasn't at home at the time[.]" She also recounted how the abuse would occur in the shed, the water shed, in Gardiner's truck, on the four-wheeler, and at the hunting lease. In many

13

respects, Michelle's testimony at trial was more detailed than that of Girola or her written statement regarding the specifics of the sexual contact and the events surrounding the sexual contact.

After examining the record as a whole, we are fairly assured that admitting Girola's testimony and written statement did not influence the jury or had but a slight effect. Therefore, we hold that the trial court's error in failing to conduct a hearing prior to the admission of such evidence was harmless.

We overrule Gardiner's first and second issues.

*Testimony of Julie Prudhome*

In his third issue, Gardiner argues that the trial court erred in admitting the testimony of Julie Prudhome who testified that Michelle described the acts of sexual abuse Gardiner performed on her. On appeal, Gardiner claims the statements made by Prudhome were inadmissible hearsay. *See* Tex. R. Evid. 802. Texas Rule of Evidence 803(4) allows for the admission of a hearsay statement if it "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Gardiner argues that this exception does not apply to Prudhome's testimony because the record does not reflect that the statements were made for the purpose of making a diagnosis or treatment plan. *See id.* 803(4).

14

Gardiner did not preserve this issue for appeal. At trial, Gardiner not only stipulated that Prudhome was qualified to testify as an expert, but also failed to object to the admission of Prudhome's records of her approximately fifty visits with Michelle from October 2019 to September 2020. Nor was there any objection when Prudhome went on to describe what Michelle told her during those visits. To preserve a complaint for appeal, a party must first present a timely request, objection, or motion in the trial court that states the specific grounds for the desired ruling if it isn't apparent from the context of the record to avoid forfeiting the right to raise it on appeal. Tex. R. App. P. 33.1. The trial court must have also ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. *Id*. Almost every right – whether constitutional or statutory – is waivable if the party fails to object, move for relief, or ask the trial court for relief before complaining about the alleged error in a later appeal. *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986); *Sartin v. State*, 680 S.W.3d 663, 667 (Tex. App.—Beaumont 2023, no pet.). There are, however, two relatively small categories of errors that are exceptions to the general rule: (1) violations of rights which are waivable-only; and (2) denials of absolute systemic requirements. *Saldano v. State*, 70 S.W.3d 873, 888 (Tex. Crim. App. 2002) (cleaned up). Waivable-only rights are "'rights of litigants which must be implemented by the system unless expressly waived.'" *Mendez v. State*, 138 S.W.3d 334, 340 (Tex.

15

Crim. App. 2004) (quoting *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997)); *Saldano*, 70 S.W.3d at 888.

Even if we were to assume that Michelle's statements to Prudhome were not made for medical diagnosis or treatment, evidentiary complaints such as the one Gardiner raises in his third issue are forfeited in the absence of a proper and timely objection to the evidence during trial. *See Saldano*, 70 S.W.3d at 889 (observing that under the *Marin* framework, a defendant's "failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence[]"). Because Gardiner failed to object to Prudhome's testimony at trial, he failed to preserve his complaint for appellate review. Issue three is overruled.

*Admission of the Recorded Phone Call and Interview*

In his fourth issue, Gardiner complains that the trial court erred in admitting a recording of a telephone call and an interview between Gardiner and Lieutenant McClelland. He asserts that the statements made in the recording were not voluntary for several reasons. First, he argues that he was "misled" and points to his trial testimony to show that he did not understand what was going on when he was talking with McClelland. Next, he argues that because McClelland never informed Gardiner that their conversation was being recorded, the trial court should have excluded the video. Finally, he argues that he made the statements without counsel present.

16

Gardiner filed a motion to suppress the recordings, and we construe Gardiner's fourth issue as challenging the denial of his motion to suppress as well as the overruling of his objections at trial. During the suppression hearing, McClelland testified that he had heard that Gardiner knew of the outcry statement and was depressed, so he called Gardiner on the phone. Gardiner spoke to McClelland voluntarily over the phone. McClelland asked Gardiner if he wanted to come in and talk to him in person, and Gardiner agreed. The phone conversation and in-person interview took place prior to McClelland's obtaining an arrest warrant for Gardiner.

McClelland testified that Gardiner voluntarily came to the sub-courthouse with his mother, who stayed outside during the interview, to talk to him in his office. McClelland said Gardiner was free to get up and leave at any point during the interview; Gardiner was neither under arrest nor detained. McClelland read Gardiner his Miranda warnings prior to the interview, even though Gardiner was not in custody, because McClelland wanted Gardiner to be aware of his rights and did not need to make a statement at all. At no point during the interview did Gardiner request an attorney.

The State offered the recorded phone call and interview McClelland conducted with Gardiner at the hearing. The recorded in-person interview showed that McClelland read Gardiner his Miranda rights. Gardiner affirmatively nodded

17

his head when asked if he understood his rights. When McClelland asked Gardiner if he wanted to talk to him, Gardiner responded, "I don't know what to do, I've never been in this situation before." McClelland told Gardiner that Michelle had already explained everything that had happened, and Gardiner admitted to touching Michelle's vaginal area and putting his mouth on Michelle's vagina. Gardiner again repeated the statement, "I don't know what to do," to which McClelland responded, "I can't tell you what to do."

During the interview, Gardiner's phone rang, and he was able to answer it and talk to the person on the other end of the line. Near the end of the video, McClelland told Gardiner that he did the right thing and McClelland was going to let Gardiner take his mother back home. Gardiner asked McClelland, "Do I need to get a lawyer or anything?" McClelland told him, "That's totally up to you. I can't give you legal advice." He also told Gardiner that if he wanted a lawyer, it was totally up to Gardiner. Gardiner repeated, "I don't know what to do." McClelland escorted Gardiner out of his office, and the interview ended.

Gardiner's attorney did not ask McClelland any questions and did not call any witnesses but argued that McClelland manipulated and intimidated Gardiner and did not offer Gardiner an attorney. After hearing arguments from both counsel, the trial court denied the motion to suppress.

At trial, McClelland testified regarding the recordings. Both recordings were offered into evidence, and Gardiner renewed the objections he made during the motion to suppress hearing. The trial court overruled the objections and admitted the recordings.

"We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review." *Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018). A trial court's decision to grant or deny a motion to suppress is reviewed under an abuse of discretion standard. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). At a suppression hearing, the trial court is the exclusive trier of fact and judge of the credibility of witnesses. *See id.* An appellate court affords almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Monjaras v. State*, 664 S.W.3d 921 (Tex. Crim. App. 2022). The appellate court also affords the same amount of deference to a trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those questions turns on an evaluation of credibility and demeanor. *Id.* The court reviews *de novo* those questions not turning on credibility and demeanor. *Id.* When there are no written findings in the record, an appellate court is to view the evidence

19

in the light most favorable to the trial court's ruling and uphold the ruling on any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Lerma v. State*, 543 S.W.3d at 184.

In determining whether the trial court's ruling on a motion to suppress is supported by the record, we generally consider only the evidence adduced at the hearing on the motion unless the suppression issues have been consensually relitigated by the parties during the trial on the merits. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996); *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). Because the parties in this case consensually relitigated the suppression issues at trial, we will examine the trial evidence as well as the evidence from the suppression hearing.

First, we address Gardiner's contention that because McClelland did not inform him that their conversation was being recorded, the trial court should have excluded the video. Article 38.22, section 3 of the Texas Code of Criminal Procedure governs the admissibility of oral statements made by an accused in a criminal proceeding. Tex. Code Crim. Proc. Ann. art. 38.22, § 3. That section provides that no oral statement of an accused made as a result of custodial interrogation shall be admissible unless certain requirements are met, which are: (1) an electronic recording is made of the statement; (2) prior to the statement but during the recording the accused is given the warning in section 2, subsection (a) of the article and the

20

accused knowingly, intelligently, and voluntarily waives any rights set out in the warning; (3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered; (4) all voices on the recording are identified; and (5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article. *Id*. No portion of the statute requires the accused to be informed that the statement is being recorded. *Id.*; *Moore v. State*, 882 S.W.2d 844, 846 (Tex. Crim. App. 1994). Although article 38.22 does not apply since Gardiner was not in custody at the time of his interview, there is simply nothing that required McClelland to inform him that his statement was being recorded.

Gardiner complains that the trial court erred in admitting the video recording because he didn't have counsel present during his interview. The Fifth Amendment right to have an attorney present during police interrogation applies to any offense about which the police might wish to question a suspect. *McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991); *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009). An accused has a Fifth Amendment right to have counsel present during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 471 (1966). "Once the suspect has invoked his Fifth Amendment right to counsel, police interrogation must cease until counsel has been provided or the suspect himself reinitiates a dialogue." *Gobert*, 275

S.W.3d at 892. "The right to counsel is considered invoked where a person indicates he or she desires to speak to an attorney or have an attorney present during questioning." *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995) (quoting *Lucas v. State*, 791 S.W.2d 35, 45 (Tex. Crim. App. 1989)). "An invocation must be clear and unambiguous; the mere mention of the word 'attorney' or 'lawyer' without more, does not automatically invoke the right to counsel." *Id.* Rather, the right to counsel is considered invoked when the accused indicates that he wants to speak to an attorney or have an attorney present during questioning. *Lucas*, 791 S.W.2d at 45.

In reviewing an alleged invocation of the right to counsel, a reviewing court must look at the totality of the circumstances surrounding the interrogation and alleged invocation to determine whether an accused's statement can be construed as an actual invocation of the right. *Dinkins*, 894 S.W.2d at 351. The inquiry is an objective one: whether a reasonable officer, under similar circumstances, would have understood the statement to be a request for an attorney or merely one that *might* be invoking the right to counsel. *Id.*

Gardiner does not point to any specific testimony at trial, or any specific statement made in the recorded phone call or video interview which shows a clear request for an attorney. Instead, our review of the phone call and video shows that there was no clear invocation of Gardiner's Fifth Amendment right to counsel.

22

During the recorded phone call, Gardiner said, "I need to talk to somebody; I don't know what to do. I don't know if I need to have a lawyer or…I don't know what I've got to do." McClelland responded, "Well, if you come up here, I can talk to you." At the end of the video interview, as Gardiner was leaving, Gardiner said, "Do I need to get a lawyer? I don't know what I am supposed to do." McClelland responded, "That's totally up to you." That was the only mention of an attorney during the interview.

Here, Gardiner did not make an unequivocal request to speak to an attorney, but simply asked if he needed to get a lawyer. This statement was not a clear invocation of the right to counsel because it did not indicate that Gardiner wanted to speak to an attorney nor that he wanted an attorney to be present during questioning. *See Lucas*, 791 S.W.2d at 45. Therefore, McClelland was free to continue questioning Gardiner. Nothing on the videotape indicates that McClelland discouraged Gardiner from speaking with an attorney. In fact, McClelland told Gardiner that it was "totally up to [Gardiner]" if he wanted to get an attorney. Therefore, Gardiner's statements were not obtained in violation of his Fifth Amendment right to counsel, and the trial court did not abuse its discretion in denying Gardiner's motion to suppress on this basis.

Article 38.21 states that, "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without

compulsion or persuasion, under the rules hereafter prescribed." Tex. Code Crim.

Proc. Ann. art. 38.21. Article 38.22 contains those prescribed rules. *Id.* art. 38.22, §

6. Section 6, the "general voluntariness" provision of Article 38.22, states in relevant

part that:

> In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions.
>
> If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of a jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with specific findings of fact upon which the conclusion was based, which order shall be filed among the papers of the cause.
>
> ….
>
> Upon the finding by the judge as matter of law and fact that the statement was voluntarily made, evidence pertaining to such matter may be submitted to the jury and it shall be instructed unless the jury believes beyond a reasonable doubt that the statement was voluntarily made, the jury shall not consider such statement for any purpose nor any evidence obtained as a result thereof.[2]

*Id.* Article 38.22, Section 6, applies to "all cases where a question is raised as to the

voluntariness of a statement of an accused." *Terrazas,* 4 S.W.3d 720, 727 (Tex.

___

[2]The trial court in this case did not "enter an order" containing its findings of fact and conclusions of law. However, neither party has complained about the absence of findings and conclusions. "The 'right' to findings and conclusions is a statutory 'right' which is forfeited by a party's failure to insist upon its implementation." *State v. Terrazas*, 4 S.W.3d 720, 728 (Tex. Crim. App. 1999).

Crim. App. 1999). A confession may be found involuntary when "the totality of the circumstances demonstrates that the confessor did not make the decision to confess of his own free will." *Green v. State*, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996); *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007). "The ultimate question is whether the suspect's will was overborne." *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997); *Martinez v. State,* 513 S.W.3d 87, 93 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

"In Texas, it is well established that confessions given by adults are to be evaluated with the totality of the circumstances standard." *Delao*, 235 S.W.3d at 239. The issue of involuntariness "can be, but need not be, predicated on police overreaching." *Oursbourn v. State*, 259 S.W.3d 159, 172 (Tex. Crim. App. 2008). Thus, Section 6 protects people from police overreaching, a private threat, and even themselves. *See id.* at 172.

*Oursbourn* and other decisions provide guidance on the appropriate factors to be considered when determining if a confession is voluntary. The Court of Criminal Appeals identified a number of fact scenarios in which the defendant's statement was held involuntary under *Miranda* or the Due Process Clause because of police overreaching. *See id.* at 170-71. That decision also identified fact scenarios that could raise state-law claims of involuntariness. *See id.* at 172-73. The court suggested that "youth, intoxication, mental retardation, and other disabilities…are

factors that a jury, armed with a proper instruction, is entitled to consider." *Id.* at 173.

Gardiner argues in his brief that his statements were not made voluntarily because he was never informed that his conversation was being recorded, that he didn't understand what McClelland was talking about because he was "distraught" and had "never been in that situation before." Reviewed in the light most favorable to Gardiner, this evidence would not enable a reasonable jury to conclude that his confession was involuntary. He does not point to any evidence suggesting that he was intoxicated, mentally impaired, of low intelligence, ignorant of the situation, or threatened with physical violence of any kind, or that the officer made promises or misrepresentations that were calculated to induce him to make a false statement. *See Oursbourn*, 259 S.W.3d at 169-73; *see also Estrada v. State*, 313 S.W.3d 274, 299-300 (Tex. Crim. App. 2010).

In fact, the recorded video shows quite the opposite. The video shows that Gardiner was free to answer a telephone call during the middle of the interview; the tone of the conversation between McClelland and Gardiner was neither forceful, coercive, or misleading; the interview lasted approximately twenty-eight minutes; Gardiner never asked to leave the interview; and McClelland was the one who ended the interview because he wanted to assure that Gardiner was able to take his mother home after she had been sitting on a hard wood bench outside of McClelland's office.

26

Moreover, it is clear from the recording that Gardiner understood what was going on. Gardiner understood his rights when he affirmatively nodded after McClelland read them to him. He knew who Michelle was without McClelland's saying her name and acknowledged that she was his step-granddaughter; he answered McClelland's questions in a responsive manner; and he provided the different locations the abuse took place.

Viewing the totality of the circumstances, we conclude the entirety of Gardiner's recorded interview was voluntary. The trial court did not abuse its discretion in denying Gardiner's motion to suppress nor in overruling Gardiner's objections at trial. We overrule his fourth issue.

*Gardiner's Decision to Testify*

In Gardiner's fifth issue, he complains that the cumulative effect of the erroneous admission of all of the evidence about which he complains on appeal – the testimony from outcry witnesses, Lacy Girola and Magan Bonner, the written statement by Girola, the testimony of Julie Prudhome, and the recorded telephone call and interview – was harmful because it greatly affected his trial strategy. Gardiner claims that after the "improper[] buttressing" of Michelle's testimony by an "avalanche of improper statements," he felt "absolutely compelled to take the stand and testify in his defense" in violation of his Fifth Amendment right to remain silent.

The Fifth Amendment to the United States Constitution provides that "[n]o person…shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. This guarantee was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Mallory v. Hogan*, 378 U.S. 1, 8 (1964). A defendant's right not to testify may be waived only if the defendant's waiver is knowing, intelligent, and voluntary. *Brown v. State*, 617 S.W.2d 234, 236 (Tex. Crim. App. 1981); *Birdsong v. State*, 82 S.W.3d 538, 541-544 (Tex. App.—Austin 2002, no pet.). The right may be waived when the defendant voluntarily takes the stand. *Brumfield v. State*, 445 S.W.2d 732, 735 (Tex. Crim. App. 1969).

After the State called its first five witnesses, the trial court made the following comment after noting that defense counsel had not cross-examined any of these witnesses:

> I just want that to be on the record and to be very clear that counsel is drawing his strategies from his client and he is – he is talking with his client about these things, from my standpoint. Again, I'm not going to try and get into your strategy; but I just wanted that on the record.

Defense counsel responded:

> Yeah. That's fine. I don't mind saying that my client tells me "Just let it go. We don't have any questions. Just let it go," because he wants to tell his side of the story.

At that point of the trial, Girola had testified, the court had admitted Girola's written statement, McClelland had testified, the court had admitted the recordings of Gardiner's phone call and interview, and three other witnesses, including Michelle's

28

mother, Barbara, had testified. Neither Michelle, Bonner nor Prudhome had testified yet. So, the only potentially improper "buttressing" of Michelle's upcoming testimony at that point were Girola's testimony and written statement, the admission of which we have already held to have been harmless, and the recordings of Gardiner's own statements to McClelland, the admission of which we have already held to have been within the trial court's discretion.

Gardiner's claim that he felt compelled to take the stand due to the cumulative effect of all of the out-of-court statements is neither supported by the record, nor the result of harmful error. Gardiner's fifth issue is overruled.

## Conclusion

Having overruled all of Gardiner's issues, the judgment of the trial court is affirmed.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on March 20, 2024
Opinion Delivered July 31, 2024
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.